154 N.J. Super. 75 (1977)
380 A.2d 1178
COLD INDIAN SPRINGS CORP., A NEW JERSEY CORPORATION; MIDDLEBROOK AT MONMOUTH, INC., A NEW JERSEY CORPORATION; WOODMERE AT EATONTOWN, INC., A NEW JERSEY CORPORATION; WOODSHIRE APARTMENTS, A NEW JERSEY PARTNERSHIP; RALEIGH CORPORATION, A NEW JERSEY CORPORATION; CONTINENTAL ENTERPRISES, A NEW JERSEY PARTNERSHIP; CONTINENTAL LAND DEVELOPERS, INC., A NEW JERSEY CORPORATION, PLAINTIFFS,
v.
TOWNSHIP OF OCEAN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; AND MARTIN BAILEY, TAX COLLECTOR OF THE TOWNSHIP OF OCEAN, DEFENDANTS, AND FRANK LINZMAYER AND EILEEN L. YOUMANS, ON BEHALF OF THEMSELVES AND AS REPRESENTATIVES OF TENANTS IN BUILDINGS INVOLVED IN THIS ACTION, INTERVENING DEFENDANTS-COUNTERCLAIMANTS.
CHESTERFIELD ASSOCIATES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFFS,
v.
TOWNSHIP OF FREEHOLD, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND ROBERT N. FERRELL, TAX COLLECTOR OF THE TOWNSHIP OF FREEHOLD, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided October 21, 1977.
*83 Mr. Sheppard A. Guryan for plaintiffs Cold Indian Springs Corp. et al, and for plaintiff Chesterfield Associates, Inc. (Messrs. Lasser, Lasser, Sarokin & Hochman, attorneys).
Mr. Dennis M. Crawford for defendants Township of Ocean and Martin Bailey (Messrs. Schaefer, Crawford & Hirsch, attorneys).
Mr. Hilton P. Goldman for intervenors (Messrs. Bendit, Weinstock & Sharbaugh, attorneys).
*84 Mr. Duane O. Davison for defendants, Township of Freehold and Robert N. Ferrell (Messrs. Kaye & Davison, attorneys).
LANE, A.J.S.C.
This is the return day of orders to show cause why orders should not be entered enjoining defendants from enforcing the Tenants' Property Tax Rebate Act, N.J.S.A. 54:4-6.2 et seq., as amended, L. 1977, c. 81, against plaintiffs pending further order of the court and enjoining defendants from enforcing tax collector certifications pending further order of the court. Plaintiffs in each case have moved for summary judgment. Defendants in both actions have moved for summary judgment. Both matters are being decided in one opinion; however, they are not consolidated.
Plaintiffs in both actions allege that the Tenants' Property Tax Rebate Act is unconstitutional facially and as applied and that irreparable injury in the form of fines and civil liability to tenants will result if the act is enforced against them. Defendants were preliminarily enjoined from enforcing the Tenants' Property Tax Rebate Act and the tax collector certifications. Obligations represented in the certificates were stayed. Copies of the order to show cause and complaint in lieu of prerogative writs were ordered to be served upon defendants and plaintiffs' tenants. In Cold Indian Springs, copies of the documents were also sent to the Attorney General whose office has responded by letter that it does not intend to intervene at this time, although reserving the right to do so in the future. He has filed a brief.
Plaintiffs in the Cold Indian Springs action are owners of apartment complexes in the Township of Ocean who have joined in this action to present identical grievances about the Tenants' Property Tax Rebate Act. In addition, Cold Indian Springs, Inc. alleges that the rebate certification for Block 218-2, Lot 1-G requires plaintiff to refund monies *85 on account of a reduction in apartment units on the lot in question.
From approximately August 10 to August 15, 1977 plaintiffs received tax collector certifications from Martin Bailey, tax collector of the Township of Ocean. Plaintiffs allege that these certifications improperly included reductions in real estate taxes in 1977 which resulted from a municipal-wide revaluation of properties within the township. Each plaintiff further alleges that this revaluation "was implemented to correct an improper, incorrect and mistaken assessment imposed against plaintiff's premises." Plaintiffs claim that since they did not actually receive cash from the 1977 tax reductions, they cannot be required to pass the reduction on to tenants.
The Township of Ocean answers denying that the certifications were incorrect or that the act is unconstitutional. The township asserts that the certifications were prepared in compliance with the statute and the regulations of the Division of Local Government Services in the Department of Community Affairs. The township states that the statute is presumed to be constitutional. The township disputes Cold Indian Springs' allegation that the number of units in Block 218-2, Lot 1-G changed. The township states that there was a rearrangement of units but that the total number of units and the assessment remained the same. The township also states that the action should be dismissed for failure to join the tenants who are indispensable parties to this action.
Plaintiff in Chesterfield Associates, Inc. v. Township of Freehold is the owner of a multi-family garden apartment complex. Plaintiff received a tax collector certification from the tax collector of the Township of Freehold on or about July 25, 1977. Chesterfield Associates obtained a judgment from the Monmouth County Board of Taxation on November 15, 1976, which reduced the assessment for the premises from $2,206,900 to $1,732,300. That judgment is not reflected in the calculations for the property tax reduction. *86 Plaintiff argues that the reduction occurred before the effective date of the amendments in question. Plaintiff also argues that it is required to return money to tenants which the owner has not actually received. For these reasons plaintiff argues that the act is unconstitutional and an arbitrary and unreasonable deprivation of property without due process of law.
Plaintiff also argues that the interpretation of the act is incorrect. Plaintiff claims that the taxes paid in the base year should reflect reductions obtained from judgments of county boards of taxation. Plaintiff argues that the Legislature intended to allow landlords to retain reductions from tax appeals and if the act is interpreted to require landlords to share such reductions with tenants, a denial of equal protection results in that landlords seeking such reductions are penalized.
The Township of Freehold contends that the statutory method of determining reductions is ambiguous because it is unclear whether the base year figure should reflect reductions resulting from judgments entered by county boards of taxation. The township claims that it requested guidance from John Laezza, Director of the Division of Local Government Services in the Department of Community Affairs, who informed the township that the statute should be read to mean that the base year figure should exclude reductions resulting from judgments of county boards of taxation. The township agrees that such an interpretation may be "unjust" but states that if the court finds that interpretation should be that espoused by the Director of the Division of Local Government Services, the act should be found constitutional nonetheless. The township also opposes plaintiff's demand to free them from all responsibility under the act, arguing that the plaintiff should be required to rebate the correct amount to tenants.
Frank Linzmayer, a tenant in Twin Brook Apartments, owned by Woodshire Apartments, a plaintiff in the Ocean Township action, seeks to intervene as a defendant in this *87 action in order to protect his interest in the rebate and to assert a right to a double rebate on behalf of himself and all other tenants whose rebates are past due. Eileen Youmans, a tenant in West Park Manor Apartments, owned by Raleigh Corporation, another plaintiff in the Ocean Township action, also seeks to intervene in a similar capacity. The intervening class defendants seek to compel the plaintiffs to deposit in court twice the amount of the rebates due.
The intervening defendants seek certification to represent the class of tenants affected by the Cold Indian Springs action as well as all tenants in the State who are entitled to but have not received their property tax rebates. Intervening defendants seek not only the statutory penalties but also punitive damages and costs of the action.
The intervenors claim that the tenants are the real parties in interest and are indispensable parties to this suit.
R. 4:33-1 provides for intervention as of right:
Upon timely application anyone shall be permitted to intervene in an action if the applicant claims an interest relating to the property * * * which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
R. 4:33-2 further provides for permissive intervention:
Upon timely application anyone may be permitted to intervene in an action if his claim or defense and the main action have a question of law or fact in common. * * * In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.
Ordinarily, applications for intervention in an action are treated liberally. State v. Lanza, 39 N.J. 595, 600 (1963). In Allan-Deane Corp. v. Bedminster Tp., 121 N.J. Super. 288, 291, 292 (App. Div. 1972), rev'd 63 N.J. 591 (1973), nonresidents of Bedminster sought to intervene as of right and as a class in an action challenging the validity *88 of the township's zoning ordinance. The trial court and the Appellate Division ruled that the proposed intervenors had an insufficient interest in the litigation, sought to intervene in an untimely manner and would interfere with the expeditious disposition of the merits. 121 N.J. Super. at 292-293. The Supreme Court remanded, directing the trial court to allow the intervention.
It is clear that the tenants, Frank Linzmayer and Eileen Youmans, having a direct financial interest in this litigation and having presented a timely application for intervention, must be allowed to intervene in this action.
The question remains whether these tenants should be allowed to intervene as representative parties of the class of tenants affected by the Cold Indian Springs action. Intervenors argue that all tenants in the apartments owned by the plaintiffs in the Cold Indian Springs action are indispensable parties to this action. Plaintiffs oppose the tenants' motion to maintain their intervention as a class action.
R. 4:28-1 provides that
[a] person who is subject to service of process shall be joined as a party to the action if * * * he claims an interest in the subject of the action and is so situated that the disposition of the action in his absence may * * * as a practical matter impair or impede his ability to protect that interest * * *. If he has not been so joined, the court shall order that he be made a party.
Whether a party is indispensable depends upon the circumstances of the particular case. As a general proposition, a party is not truly indispensable unless he has an interest inevitably involved in the subject matter before the court and a judgment cannot justly be made between the litigants without either adjudging or necessarily affecting the absentee's interest. Allen B. DuMont Labs., Inc. v. Marcalus Mfg. Co., 30 N.J. 290, 298 (1959); Jennings v. M & M Transp. Co., 104 N.J. Super. 265, 272 (Ch. Div. 1969).
The subject matter of this controversy is the amount of money which the landlords must credit to the tenants. *89 As such, each tenant has an interest in the subject matter of the litigation. Any judgment issued by this court will necessarily affect the tenants. Relitigation of any issues determined adversely to the tenants will be discouraged by stare decisis. As indispensable parties, the tenants must be joined in this action.
R. 4:32-1 provides:
(a) General Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of paragraph (a) are satisfied, and in addition:
(1) the prosecution of separate actions by or against individual members of the class would create a risk either of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The factors pertinent to the findings include: first, the interest of members of the class in individually controlling the prosecution or defense of separate actions; second, the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; third, the difficulties likely to be encountered in the management of a class action.
In the absence of a clear showing that a class suit is improper, a court should certify an action as a class suit in *90 accordance with the liberal construction that must be afforded the rule. See Pressler, Current N.J. Court Rules, Comment R. 4:32. See also, Riley v. New Rapids Carpet Center, 61 N.J. 218, 228 (1972); Lusky v. Capasso Brothers, 118 N.J. Super. 369, 373 (App. Div.), certif. den. 60 N.J. 466 (1972).
Intervenors represent that there are 2500 residential rental units in the Cold Indian Springs action. Joinder is therefore impracticable. Lusky v. Capasso Brothers, supra, 118 N.J. Super. at 372.
The questions of law and fact are common to the members of the tenant class. The question of law involves the interpretation of the same section of the Tenants' Property Tax Rebate Act. The questions of fact as to the amount of the certifications are also similar. The defenses of each of the tenants are the same although their claims to rebate may vary depending on their proportionate entitlement under the statute. Differences in damages is not sufficient in itself to justify dismissal of a class action. Lusky v. Capasso Brothers, supra, 118 N.J. Super. at 373. The representative parties will fairly and adequately protect the interests of the class, as demonstrated by their performance to date.
Intervenors also argue that adjudication in the immediate case will as a practical matter substantially impair the ability of those not now parties to protect their interests. If the question of statutory interpretation or the right to a double rebate is decided adversely to the tenants, there may be more difficulty obtaining a reversal on appeal. Full participation by counsel for the class members is preferable at the trial level. Linzmayer and Youmans will therefore be allowed to intervene as a class representative of all tenants in apartment complexes owned by plaintiffs in the Cold Indian Springs action. Counsel's request to certify the tenants as representatives of all tenants in the county or State is denied. This court cannot certify a class action for matters pending before other courts.
*91 Plaintiffs urge that the court adopt the "test case" approach adopted by the Appellate Division in Kronisch v. Howard Savings Inst., 143 N.J. Super. 423, 431 (App. Div. 1976), rev'g 133 N.J. Super. 124 (Ch. Div. 1975). In Kronisch plaintiffs brought a test case to establish a constructive or express trust over mortgage monies held by defendant bank. Plaintiffs sought to be certified as a class under R. 4:32-1(b)(3). The Appellate Division ruled that in a test case such as plaintiffs', certification of the action as a class can await adjudication of liability. The court based its ruling on the superiority requirement of R. 4:32-1(b) (3).
Here, defendants are proceeding under R. 4:32-1(b)(1) (B) and no such superiority requirement is contained in that section of the class action rule.
R. 4:32-2 provides the notice requirements for class actions:

* * * * * * * *
(b) Notice. In any class action maintained under R. 4:32-1(b) (3) the court shall direct to the members of the class the best notice practicable under the circumstances, consistent with due process of law. The notice shall advise that (1) each member, not present as a representative, will be excluded from the class by the court if he so requests by a specified date; (2) the judgment, whether favorable or not, will bind all members who do not request exclusion; and (3) any member who does not request exclusion may enter an appearance. The cost of notice may be assessed against any party present before the court, or may be allocated among parties present before the court, pending final disposition of the cause.
(c) Judgment. The judgment in an action maintained as a class action under R. 4:32-1(b) (1) or (b) (2), whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under R. 4:32-1(b) (3), whether or not favorable to the class, shall, to the extent practicable under the circumstances, consistent with due process of law, describe the class and specify those who have been excluded from the class. In any class action, the judgment may, consistent with due process of law, confer benefits upon a fluid class, whose members may be, but need not have been members of the class in suit.
*92 While the notice requirement of paragraph (b) of the rule is directed to actions under R. 4:32-1(b)(3), the judgment in an action maintained as a class action under R. 4:32-1(b)(1) includes absentee class members. While the tenants have been noticed that the action is pending before this court, they have not been informed that they are members of a class whose rights will necessarily be determined in this action. As such, these tenants are entitled to notice of maintenance of this action as a class action. Such notice will be mailed by plaintiffs by regular mail or can be deposited in each tenant's mailbox within 20 days of the order on the matters before the court. The costs of providing this notice will be divided between the parties, plaintiffs being responsible for 50% of the cost and defendants-intervenors being responsible for the other 50%. Defendants-intervenors will supply the wording of the notice within ten days of the order.
Defendants-intervenors move to require plaintiffs to post security for the amount in controversy, either by posting the amount of the rebates due or double that amount. While R. 4:52-3 allows a court to require such security when granting a temporary restraining order, such security is unnecessary in the present circumstances.
The motion requiring plaintiffs to post security is therefore denied.
In November 1975 the New Jersey Constitution was amended to provide:
The Legislature may adopt a homestead statute which entitles homeowners, residential tenants and net lease residential tenants to a rebate or a credit of a sum of money related to property taxes paid by or allocable to them at such rates and subject to such limits as may be provided by law. [N.J. Const. (1947), Art. VIII, § 1, par. 5]
The Tenants' Property Tax Rebate Act as originally enacted was effective August 17, 1976. The obvious intention of the original provisions was to require owners of multiple dwelling complexes to pass on to tenants tax savings which resulted *93 from state aid for local schools. The original provision defined a property tax reduction as "the amount of property tax reduction to the property owner of the qualified real rental property attributable solely to the State aid received during a tax period from the State Aid for Schools Fund." N.J.S.A. 54:4-6.3(b).
The act was amended by L. 1977, c. 81, effective May 3, 1977. Property tax reduction was redefined as follows:
"Property tax reduction" means 0.65 times the difference between the amount of property tax paid or payable in any year on any qualified real rental property, exclusive of improvements not included in the assessment on the real property for the base year, and the amount of property tax paid in the base year, but such calculations for the property tax reduction shall exclude reductions resulting from judgments entered by county boards of taxation, the Division of Tax Appeals in the Department of the Treasury, or by courts of competent jurisdiction. "Property tax reduction" shall also include 0.65 times any rebate or refund of school property taxes which may be provided. * * * "Property tax reduction" shall not include any amount in excess of that which is identified herein. Any such amount shall be retained by the property owner." [L. 1977, c. 81, § 1(b), amending N.J.S.A. 54:4-6.3(b)]
Base year is defined as "the calendar year prior to the year in which this act takes effect, and for qualified real rental property which is first rented * * * after the effective date of this act, the calendar year in which it is first offered for rent or lease." L. 1977, c. 81, § 1(c), amending N.J.S.A. 54:4-6.3(c).
The Director of the Division of Local Government Services in the Department of Community Affairs promulgated regulations implementing the act which were adopted July 8, 1977. 9 N.J. Reg. 357b. N.J.A.C. 5:30-16.2(d) sets the calendar year of 1976 as the base year. These regulations reiterate word for word the statutory definition of property tax reduction. A model form to be used for the tax collector certification was also prepared, which form was used by defendants.
The local tax collector is required to compute the property tax reduction and mail a tax collector certification to the *94 property owner. N.J.S.A. 54:4-6.5. The property tax rebate or credit for each dwelling unit may be paid to the tenant or credited as a rent reduction. L. 1977, c. 81, § 5, amending N.J.S.A. 54:4-6.7. The landlord is required to file a statement of the rebates paid with the tax collector or with an existing local rent leveling board within 30 days of receipt of notification. L. 1977, c. 81, § 6, amending N.J.S.A. 54:4-6.8. The landlord must also post a public notice of the disposition of tax reductions.
Failure to comply with these provisions can result in minimum liability of $100 or a double rebate to each tenant and a fine of $100 for each offense. N.J.S.A. 54:4-6.11, N.J.S.A. 54:4-6.12.
The controversies involved require a determination of the meaning of property tax reduction within the act.
Plaintiffs in the Cold Indian Springs action differ with the tax collector's interpretation of the act in that they claim that the property tax reduction should not include reductions resulting from a municipal-wide revaluation or from judgments of county boards of taxation, the Division of Tax Appeals or courts of competent jurisdiction. These plaintiffs contend that the Legislature intended to require landlords to rebate to tenants only those tax reductions resulting from tax reform legislation. Plaintiffs argue that this intent did not change when the Legislature amended the rebate formula. Chesterfield Associates also argues that the statute has been interpreted wrongly.
In respect for the doctrine of separation of powers, a clear and unambiguous statute is not open to construction by the courts. In Watt v. Franklin Mayor & Council, 21 N.J. 274, 277 (1956), the court stated: "But few statutes can boast of * * * clarity * * * and the court must take the responsibility of determining in each case presented whether the particular statute * * * is clear and unambiguous." When a statute is ambiguous, the court can resort to extrinsic aids in order to determine the legislative intent. Gangemi v. Berry, 25 N.J. 1, 10 (1957).
*95 It is the responsibility of the court in construing a statute to determine what the Legislature intended rather than apply a meaning which seems fair and equitable to the court. Matawan v. Monmouth Cty. Tax Bd., 51 N.J. 291, 298 (1968). It is not the province of the judiciary to question the wisdom of statutory regulations, In re Howard Savings Inst., 32 N.J. 29, 46 (1960), or to revise tax programs. Matawan v. Monmouth Cty. Tax Bd., supra at 298; Ridgefield Park v. Bergen Cty. Bd. of Taxation, 31 N.J. 420, 431 (1960).
The criteria and principles applicable in the interpretation of legislation apply as well to the interpretation of amendatory acts. 1A Sutherland, Statutory Construction (4 ed. 1972), § 22.29 at 176 (hereinafter Sutherland).
A change in language in a statute ordinarily implies a purposeful alteration in substance. Nagy v. Ford Motor Co., 6 N.J. 341, 348 (1951); Essex Cty. Retail Liquor Stores Ass'n. v. Mun. Bd. of Alcoholic Beverage Control, 77 N.J. Super. 70, 78 (App. Div. 1962).
The courts have declared that the mere fact that the legislature enacts an amendment indicates that it thereby intended to change the original act by creating a new right or withdrawing an existing one. Therefore, any material change in the language of the original act is presumed to indicate a change in legal rights. * * * Thus, in interpreting an amendatory act there is a presumption of change in legal rights. This is a rule peculiar to amendments and other acts purporting to change the existing statutory law. [1A Sutherland, supra, § 22.30 at 178; footnotes omitted]
In line with these principles, the amendments to the Tenants' Property Tax Rebate Act must be construed.
The statutory definition of property tax reduction in the amended version of the Tenants' Property Tax Rebate Act is worded ambiguously and susceptible of more than one interpretation. "[B]ut such calculations for the property tax reduction shall exclude reductions resulting from judgments entered by county boards of taxation, the Division of Tax Appeals * * * or by courts of competent jurisdiction" can *96 mean that such reductions should be excluded from both the base year and the year of calculation. On the other hand, the clause can be read to require that such reductions should be subtracted from the difference between the base year and the year of calculation. Yet a third interpretation is advanced by the Director of the Division of Local Taxation, which interpretation has been followed by defendants. This interpretation seems to exclude reductions from tax appeals only from the base year determination.
Because of the ambiguity in the statute, the court can resort to extrinsic aids, including pertinent legislative history, in order to determine the legislative intent. It is clear beyond cavil that the original act intended to require landlords to pass on only those reductions attributable to the State Aid for Schools Fund. The statement attached to Senate Bill 1546, the original tenants' rebate legislation, stated the rationale of the rebate mechanism.
The purpose of this bill is to ensure that the benefits of any property tax savings which would result from tax reform legislation would be provided tenants in addition to landlords, homeowners and commercial taxpayers. Pending tax reform legislation would levy an income tax on both homeowners and tenants in order to reduce property tax burdens. But since tenants pay property taxes indirectly through their landlords, without some type of pass-through mechanism like that provided by this bill, landlords would reap a windfall from any property tax reduction scheme. Without this bill, tenants who provide the money for the property taxes of their apartments would receive little or no benefit from any expected property tax reduction, but they would nonetheless have to assume new burdens under the income tax.
Assembly Bill 2196, introduced August 2, 1976, sought to repeal Senate Bill 1546 and substitute the following definition of property tax reduction:
"Property tax reduction" means the amount of property tax paid or payable in any year on any property, exclusive of improvements not included in the assessment on the property for the base year, subtracted from the amount of property tax paid in the base year, but such calculations for the property tax reduction shall exclude changes resulting from revaluation or reassessment.
*97 The statement attached to Assembly Bill 2196 was short:
The purpose of this bill is to ensure that the benefits of any property tax savings which would result from tax reform legislation would be provided tenants in addition to landlords, homeowners and commercial taxpayers.
After several amendments to the definition of property tax reduction, the Senate proposed amending the prior law and repealing only a section of that law. The definition of property tax reduction is that contained in the present act.
The statement attached to the Senate version of the bill explained:
The amount of property tax reduction recognized under this bill differs from the current provisions at law. Currently only that amount of property tax reduction attributable to State [aid] and received for school purposes is to be considered. Under this bill any reduction realized by the property owner must be considered in calculating the tenant credit or rebate. [Senate Revenue, Finance and Appropriations Comm., Statement to Senate Comm. Substitute for Assembly Bill 2196 (Dec. 14, 1976)]
Plaintiffs have presented voluminous legislative history on the history of tax reform in New Jersey. This history is not probative of the legislative intent in amending the rebate act. The court must attempt to determine what the Legislature could reasonably have intended from the language of the act and sparse extrinsic aids.
It should be noted that while the court can be guided by an administrative agency's interpretation of a statute it is charged with enforcing, In re Application of Saddle Brook, 71 N.J. 14, 24 (1976); In re Glen Rock, 25 N.J. 241, 246 (1957), overruled on other grounds, North Wildwood v. Wildwood Bd. of Comm'rs, 71 N.J. 354, 357 (1976), the agency's interpretation cannot be allowed to change the scope of the statutory language. Service Armament Co. v. Hyland, 70 N.J. 550, 563 (1976), rev'g 131 N.J. Super. 38, 49 (App. Div. 1974).
*98 Here, the interpretation advanced by the Division of Local Government Services does not do justice to the statutory language. The clause in question refers to "calculations" in the plural. The interpretation of the Division of Local Government Services excludes reductions from tax appeals only from the base year.
Webster's Third New International Dictionary (1971) at 315 defines calculation as "* * * the result of an act of calculating: a conclusion reached by reckoning or estimation sometimes accompanied by a * * * written statement of the steps by which the conclusion has been reached."
This definition supports the interpretation that reductions resulting from tax appeals as enumerated in the statute should be subtracted from the difference between the base year and the year from which the reduction is determined. That difference, as provided by the definition of property tax reduction, is the conclusion or calculation from which the tax appeal reductions are to be subtracted. It makes good sense in that landlords will have the incentive to appeal incorrect tax assessments and valuations.
The certification in the Chesterfield Associates case is therefore incorrect. There are minor discrepancies in plaintiff's computation to which the parties agree so that the correct figure based upon this interpretation can be agreed to.
Plaintiffs in the Cold Indian Springs matter contend that municipal-wide revaluations must also be subtracted from the calculations of property tax reduction. Plaintiffs contend that such revaluations are unrelated to tax reform legislation and therefore should not be rebated to tenants.
N.J. Const. (1947), Art. VIII, § I, par. 1(a) provides:
Property shall be assessed for taxation under general laws and by uniform rules. All real property assessed and taxed locally or by the State for allotment and payment to taxing districts shall be assessed according to the same standard of value, except as otherwise permitted herein, and such real property shall be taxed at the general tax rate of the taxing district in which the property is situated, for the use of such taxing district.
*99 The essential purpose for revaluation of all properties within a district is to achieve tax equalization among members of a taxing district and among municipalities in the same county. Middlesex Cty. Bd. of Taxation v. Sayreville, 133 N.J. Super. 41, 44 (App. Div. 1975); Essex Cty. Bd. of Taxation v. Belleville, 92 N.J. Super. 338, 343 (Law Div. 1966), aff'd 95 N.J. Super. 327 (App. Div. 1967). In order to implement the constitutional standard of tax equality, the Legislature has mandated that property be valued each year. N.J.S.A. 54:4-23. Taxing equality can be achieved by securing a 100% true valuation through revaluation. Essex Cty. Bd. of Taxation v. Belleville, supra, 92 N.J. Super. at 345.
Despite the constitutional and statutory provisions, many municipalities did not revalue property on a regular basis. Thus, the Supreme Court in In re Appeals of Kents 2124 Atlantic Ave., Inc., 34 N.J. 21, 31 (1961), devised a remedy which prompted taxing authorities to revalue property on a periodic basis. "1975-1976 Supreme Court Term, Survey of Municipal Corporations," 30 Rutg. L.R. 714, 737-738 (1977). Such revaluations are designed to achieve equality in taxation.
There is substantial opinion that reliance on the property tax to meet the costs of government caused distortion in property tax values.
Since the costs of government vary from one taxing district to another, the impact of local, county, and state demands can inequitably affect property valuations within a given taxing unit. This is particularly true in this state where approximately three-fourths of all non-payroll state and local revenues are derived from property. [Casper, "State and Local Taxation," 6 Rutg. L. Rev. 127, 132 (1951); see also, Casper, "State and Local Taxation," 7 Rutg. L. Rev. 100, 107, n. 24 (1952)]
Property tax values are also influenced by the tax rate.
Doubtless in many cases assessors, in fixing the valuation of property at its fair market value, are influenced by the local or special tax rate, which almost inevitably affects its sale value. [Annotation "Valuation of property for purposes of taxation as affected by *100 variation of tax rates for local or special purposes in different local taxing units, or inclusion of property within particular taxing unit," 119 A.L.R. 1300 (1939)]
Apartment buildings are often valued considerably higher than other residential units. Comment, "The Property Tax and Tenant Equality," 89 Harv. L. Rev. 531, 534 (1976) (hereinafter 89 Harv.).
Proponents of a state income tax were aware that overburdening the municipal property tax system with the costs of government resulted in distortions in value. Former Governor William T. Cahill, in A Master Plan for Tax Reform (May 18, 1972), stated:
In my opinion, the real estate tax in New Jersey is regressive and unfair to both owner and renter alike. It really amounts to a very high excise tax on housing services. In central cities, the rates are truly staggering and are on the increase. Since housing is a necessity, lower-income families spend a larger percentage of their income on housing than do wealthier families. It is also a fact that high-valued dwellings are assessed at a lower proportion of their true market value than less-expensive housing units. [at 38]
The New Jersey Tax Policy Committee also studied and pointed out the deviations of assessments from true market value which overreliance on property tax causes. Summary Report of N.J. Tax Policy Comm., Feb. 23, 1972 at 27-28. N.J. Const. (1947), Art. VIII, § I, par. 7 provides:
No tax shall be levied on personal incomes of individuals, estates and trusts of this State unless the entire net receipts therefrom shall be received into the treasury, placed in a perpetual fund and be annually appropriated, pursuant to formulas established from time to time by the Legislature, to the several counties, municipalities and school districts of this State exclusively for the purpose of reducing or offsetting property taxes.
With implementation of the state income tax and its application to property tax relief, it is possible that the values of property can more accurately approach real value. The distortions in value caused by overreliance on the property tax *101 may be relieved. Particularly, residential housing which was previously overvalued may now be valued at a lower figure because of the tax reform. Thus, tax reductions from revaluations may be the result of tax reform legislation. It should be noted, however, that the amendments broaden the scope of the rebate provisions to include "any reduction realized by the property owner." Statement to Senate Comm. Substitute for Assembly Bill 2196.
It is true that the original draft of Assembly Bill 2196 referred to exclusions resulting from revaluation or reassessment. It would appear that the Senate amendments to that section were intended to clarify the purpose of the provision, i.e., to allow landlords to retain reductions obtained through tax appeals.
Moreover, if the act is interpreted as plaintiffs in the Cold Indian Springs action urge, the amendments to the act become meaningless. The Legislature knew that property is valued each year, yet it did not exclude such figures from the calculations. Revaluation on a municipality-wide basis cannot be considered a casus omissus.
Plaintiffs contend, however, that if the act is interpreted to require them to return to tenants their proportionate share of reductions in taxes resulting from revaluations, an unconstitutional situation results.
Plaintiffs assert that the act lacks reasonable standards because the definition of property tax reduction refers to property tax paid in the base year. Plaintiffs argue that a landlord can choose not to pay any taxes in the base year or can pay any amount, thus determining the amount of the tenants' rebate.
First, it is questionable whether the word "paid" can be given the interpretation urged by plaintiffs. The statement of the Senate Revenue, Finance and Appropriations Committee which accompanied the Senate Committee Substitute for Assembly Bill 2196 (Dec. 14, 1976) does not support plaintiffs' contention: *102 The calculation for the property tax reduction is the difference between taxes paid or payable in a "base year" and the current tax year, with the base year to be tax year 1976 for currently rented or leased property, and the first year of rental or lease for newly available residential units.
In addition, the regulations of the Division of Local Government Services are contrary to plaintiffs' position. N.J.A.C. 30:16.7(e) provides:
Owners who have not paid their property taxes during the duration of this act shall rebate or credit their tenants pursuant to the provisions of this act.
Even if plaintiffs' interpretation was accepted, the theory of delegation of power is unsupported. In B & L Motor Freight, Inc. v. Heymann, 120 N.J. Super. 270, 283 (Ch. Div. 1972), aff'd o.b. 125 N.J. Super. 372 (App. Div. 1973), plaintiffs attacked the delegation of power to the Director of the Division of Motor Vehicles to set fees for highway use as an unlawful delegation of taxing power. The court found no merit in the argument since the Director's calculations of fees were governed by the laws of the state in which the truck was registered.
In Humane Society v. N.J. State Fish and Game Council, 70 N.J. 565, 579 (1976), app. dism. 429 U.S. 1032, 97 S.Ct. 723, 50 L.Ed.2d 744 (1977), the court stated that "[e]ven delegation of legislative authority to private parties may withstand constitutional challenge if sufficient safeguards exist to prevent an arbitrary concentration of power in persons or groups motivated by self interest." The test is whether the delegation is reasonable under the circumstances considering the purpose and aim of the statute. Male v. Renda Contracting, 64 N.J. 199, 201, cert. den. 419 U.S. 839, 95 S.Ct. 69, 42 L.Ed.2d 66 (1974).
Here the landlord's "choice" of setting taxes paid in the base year is not unfettered so as to lead to an arbitrary concentration of power. As pointed out by Ocean Township, a landlord who refuses to pay taxes from the year 1976 in order *103 to avoid giving tenants a rebate would be subject to a tax lien and foreclosure. This possibility adequately guarantees that taxes will be paid in 1976.
The act as construed requires plaintiffs to pass on 65% of the tax reduction as calculated by the tax collector, despite the fact that plaintiffs have never physically obtained the money represented by the reduction. The constitutionality of this scheme is challenged.
The sole task of the court in reviewing the constitutionality of economic regulation is to determine whether the Legislature had a reasonable factual basis for the legislation. Hutton Park Gardens v. W. Orange Town Council, 68 N.J. 543, 561-562 (1975). The validity of the Tenants' Property Tax Rebate Act depends on the initial assumption that rents actually include the property taxes paid by the owner in any given year. The Legislature reasonably concluded that rents do include amounts paid for property taxes. See 89 Harv., supra, at 532. When property taxes are reduced because of lower valuations or increased revenues from other sources, rents may not be lowered to reflect this reduction. Thus, the Legislature has mandated that tenants receive their proportionate share of 65% of the tax reduction. Assuming that rents are not lowered or adjusted to reflect the tax reduction, the landlord would realize a greater profit. The Tenants' Property Tax Rebate Act requires the landlord to pass that additional profit on to the tenants. The fact that a rate of return is lowered by economic regulation does not render the act unconstitutional. Hutton Park Gardens v. W. Orange Town Council, supra at 570.
Local rent control ordinances have contained provisions requiring landlords to refund net tax reductions obtained through tax appeals or lowered assessments. In Inganamort v. Fort Lee, 120 N.J. Super. 286, 301-302 (Law Div. 1972), aff'd 62 N.J. 521 (1973), the court approved a rent control ordinance which required landlords to pass on 50% of any reduction in taxes.
*104 In Leone Management Corp. v. West N.Y. Bd. of Comm'rs, 130 N.J. Super. 569 (Law Div. 1974), aff'd o.b. 144 N.J. Super. 353 (App. Div. 1976), the court approved a West New York rent control ordinance which required landlords to pass on 75% of net tax reductions.
The West New York ordinance provides for a tax refund of 75% of any net tax reduction obtained by the landlord through a tax appeal or through the normal processes of diminution of assessment or tax rate. * * * It is manifest that this refund is payable only if a tax surcharge has been paid by the tenant and to the maximum extent of said tax surcharge. Counsel for the municipality has conceded that such is the intent and purpose of the refund provisions. In case of doubt, they are hereby construed in that manner; and as such there can be no objection to their validity. The computation should be made on the same basis as that properly applied to the tax surcharge. [at 580]
A similar tax reduction provision was contained in the rent control ordinances considered by the Supreme Court in Brunetti v. New Milford, 68 N.J. 576, 583 (1975). While the court did not specifically address the constitutionality of the provision, the court did state in reference to tax surcharge provisions that a rent control ordinance need not permit landlords to recover all operating costs. Id. at 597-598.
Plaintiffs argue that Property Owners Ass'n v. North Bergen, 74 N.J. 327 (1977), supports their position that the Tenants' Property Tax Rebate Act is unconstitutional. In this recently decided case, the Supreme Court invalidated a rent control ordinance amendment which created a special class of senior tenants who were 65 years old or older and whose yearly income, exclusive of gifts, inheritance, social security, railroad retirement and governmental pensions, was less than $5,000. Rents for senior tenants were frozen as of January 1, 1974 and could not be increased. If a landlord had obtained the maximum increases from the other tenants and was eligible for a special emergency increase under the ordinance, the borough would pay a rent subsidy to the *105 landlord of up to 10% of the rents paid by the senior tenants. Id. at 331. No provision was made for relief to the landlord if the borough subsidy was insufficient to meet the added increases. The court found that imposition of costs under the ordinance violated due process by requiring landlords with many senior tenants to absorb expenses and subsidize senior tenants. Id. at 334. Likewise, other tenants within the building are required to bear costs which cannot be imposed on the senior tenants. Id. at 336. Requiring other tenants to subsidize the senior tenants was particularly offensive in view of the definition of income in the ordinance. Id. at 28, 30. While the court found that subsidization of senior citizen housing was laudable, the court stated that it was necessary to impose such costs on the public generally in order to pass constitutional muster. Id. at 338.
Plaintiffs argue that the Rebate Act requires landlords to subsidize tenants. Plaintiffs have failed to point out how the act actually does this by denying them a reasonable rate of return. That possibility existed in the North Bergen ordinance where the landlords' ability to increase rents was limited. Here there is no limitation on plaintiffs' ability to charge rents which reflect all operating costs plus the desired rate of profit.
The Tenants' Property Tax Rebate Act is therefore constitutional and is not arbitrary and unreasonable. Whether the act is constitutional as applied to plaintiffs depends on whether the act is confiscatory. Cf. Hutton Park Gardens v. W. Orange Town Council, supra, 68 N.J. at 569 (test of constitutionality of rent control). An act is not confiscatory if it allows a just and reasonable return. Id.
Whether a particular regulation of prices fails to permit a just and reasonable return is a mixed fact-law question. The burden of proof is heavily upon the parties alleging confiscation to demonstrate it. [Id. at 570]
The detailed elements of the reasonable rate of return formula are outlined in Troy Hills v. Parsippany-Troy *106 Hills Tp. Council, 68 N.J. 604, 622-630 (1975). The elements of that burden should ordinarily be presented first to a rent control board on the local level. Brunetti v. New Milford, supra, 68 N.J. at 588-589. The mere allegation that a constitutional issue is involved does not relieve plaintiffs of the necessity of exhausting administrative remedies. Id. at 590. Since there is no rent control board in Ocean Township, plaintiffs need not meet such a requirement. They must nonetheless make a colorable claim that constitutional issues are involved. Plaintiffs have made no allegation that they are denied a reasonable rate of return.
Construing the statute to require landlords to pass on reductions obtained through municipal revaluations while allowing landlords who obtain tax reductions through tax appeals to retain the reduction does not result in a denial of equal protection.
It is fundamental to equal protection analysis that the Legislature has a wide range of discretion in classifying persons for different treatment. Troy Hills v. Parsippany-Troy Hills Tp. Council, supra, 68 N.J. at 633; Wilson v. Long Branch, 27 N.J. 360, 377, cert. den. 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed.2d 104 (1958). A classification is reasonable if it rests on some ground having a real and substantial relationship to the basic objective of the statute or to some other relevant consideration of public policy. Shepard v. Woodland Tp. Comm., 71 N.J. 230, 247 (1976); Wilson v. Long Branch, supra, 27 N.J. at 377; Washington Nat'l Ins. Co. v. Bd. of Review, 1 N.J. 545, 552 (1949). Under the conventional "two-tiered" analysis applied by the United States Supreme Court, the party attacking a classification on equal protection grounds must demonstrate that the legislation lacks a rational relationship to a legitimate state objective. San Antonio Independent School Dist. v. Rodriguez, 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973); Taxpayers Ass'n v. Weymouth Tp., 71 N.J. 249, 281 (1976); Troy Hills v. Parsippany-Troy Hills Tp. Council, supra, 68 *107 N.J. at 633; "Developments in the Law  Equal Protection," 82 Harv. L. Rev. 1065, 1077 (1969) [hereinafter 82 Harv.].
Strict judicial scrutiny will be applied where the classification discriminates against a suspect class or infringes upon a fundamental right. San Antonio Independ. School District v. Rodriguez, supra, 411 U.S. at 19, 31, 93 S.Ct. at 1289, 1295. A court must closely examine threshold justifications for applying strict scrutiny to a legislative classification. Id. at 19, 93 S.Ct. at 1289.
A suspect class consists of persons with immutable characteristics determined solely by accident or birth. Frontiero v. Richardson, 411 U.S. 677, 686, 93 S.Ct. 1764, 1770, 36 L.Ed.2d 583 (1973). Race, alienage and national origin have been recognized as suspect classes but the court has "strongly resisted extension of this list." Taxpayers Ass'n v. Weymouth Tp., supra, 71 N.J. at 281-282, n. 15.
Fundamental rights include established constitutional rights such as the right to vote and travel and the right to procreate. 82 Harv., supra at 1127-1128. A fundamental right cannot be based on the social importance of the interest, and recognition of rights as fundamental is limited. San Antonio Independ. School Dist. v. Rodriguez, supra, 411 U.S. at 31, 93 S.Ct. at 1295. Economic interests are clearly not fundamental rights. Id. at 40-41, 93 S.Ct. at 1300-1301. On the contrary, federal review of state fiscal policies on equal protection grounds is extremely limited. Id.; 82 Harv., supra at 1127-1128.
Plaintiffs are neither members of a suspect class nor holders of fundamental rights deserving of strict judicial scrutiny. The rational basis test is therefore applicable.
In allowing landlords who pursue tax appeals to retain the benefit of the tax reduction, the Legislature may have hoped to give landlords an incentive to correct tax assessments. By reducing tax assessments, a large portion of the landlords' costs are stabilized. This classification relates to the valid social objective of assuring that tax assessments are correct. *108 The classification also results in a form of rent control which is relevant to the rebate objective. The object of the Tenants' Property Tax Rebate Act is to allow tenants to share in tax reductions. The Legislature may rationally have concluded that a landlord obtaining a reduction through a tax appeal would not raise the rent. Thus, the tenants indirectly benefit from the tax reduction. In addition, such a landlord has gone to expense to obtain the reduction.
Although the amount of reduction accruing to tenants through tax appeals may be less than that obtained by tenants in areas where municipal-wide revaluations occur, "equal protection does not demand immediate logical tidiness." N.J. Chapt., Am. I.P. v. N.J. State Bd. of Prof. Planners, 48 N.J. 581, 602, app. dism. 389 U.S. 8, 88 S.Ct. 70, 19 L.Ed.2d 8 (1967). The Legislature may select one phase of a field and apply a remedy there, neglecting others. Id.; Williamson v. Lee Optical, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955); Haviland v. Butz, 177 U.S. App. D.C. 22, 29, 543 F.2d 169, 176 (D.C. Cir.1976).
As far as equal protection is concerned, the Constitution guarantees that those similarly situated will be treated on an equal basis. Covington & Lexington Turnpike Rd. Co. v. Sandford, 164 U.S. 578, 596, 17 S.Ct. 198, 206, 41 L.Ed. 2d 560 (1896). Landlords who through their own incentive obtain tax reductions are not similarly situated in relation to landlords who obtain tax reductions through municipal-wide revaluations.
One can say that the landlord who does not seek a tax appeal is an inefficient operator. As stated in Troy Hills v. Parsippany-Troy Hills Tp. Council, supra, 68 N.J. at 627: "[I]t should be noted that the constitution does not require that inefficient operators be permitted the same return as efficient managers."
Justice Harlan also stated in In re Permian Basin Area Rate Cases, 390 U.S. 747, 769, 88 S.Ct. 1344, 1361, 20 L.Ed.2d 312 (1968):
*109 No constitutional objection arises from the imposition of maximum prices merely because "high cost operators may be more seriously affected * * * than others," * * * or because the value of regulated property is reduced as a consequence of regulation. * * * Regulation may, consistently with the Constitution, limit stringently the return recovered on investment, for investors' interests provide only one of the variables in the constitutional calculus of reasonableness. [Footnotes omitted]
The legislative classification is reasonable and does not deny equal protection.
Plaintiffs also argue that the tenants' rebate scheme impairs the landlord tenant contracts by requiring landlords to return a portion of the contractually agreed upon rent. In order to sustain a claim that a state regulation impairs the obligation of contracts, it must first be shown that an obligation is impaired. U.S. Trust Co. v. New Jersey, 431 U.S. 1, 97 S.Ct. 1505, 1515, 52 L.Ed.2d 92 (1977), rev'g 69 N.J. 253 (1976) and 134 N.J. Super. 124 (Law Div. 1975).
The lease between landlord and tenant contains an implied covenant that for the year of the lease the tenant agrees to pay the landlord a fixed sum of money. Cf. Marini v. Ireland, 56 N.J. 130, 144 (1970) (implied covenant of habitability). That sum represents the amount of money which the landlord has determined is necessary to cover expenses and to provide the desired rate of profit. When a major expense such as property taxes is reduced, the landlord is obtaining a greater profit than that originally agreed upon since his expenses are reduced. The fact that other expenses might increase entitles the landlord to obtain a rent increase. It can therefore be said that the obligation of contracts is not impaired. The Tenants' Property Tax Rebate Act is a form of rent control which attempts to assure that the benefits of tax reform legislation are shared by tenants. The New Jersey Tax Policy Committee stated:
[I]t is the Committee's strong view that tenants should be in the position of negotiating rent reductions based on the degree of property *110 tax relief provided to owners. To the extent that market imperfections do not allow this relief, the renters deduction will at least assure that a portion of the property tax relief is passed on to renters. [Report of the N.J. Tax Policy Comm., Part V at 92 (Feb. 23, 1972)]
In order to rectify these market imperfections and to distribute the benefits of tax reform legislation, the Legislature enacted this act which is a valid exercise of the police power. Even if the fiction upon which this act is based is considered to be an impairment of the obligation of contracts, it is well settled that legislation which is necessary for the protection of the health, safety and welfare of the public may alter or abrogate existing contractual rights without affecting its validity under the impairment of contracts clauses of state and federal constitutions. City of El Paso v. Simmons, 379 U.S. 497, 508, 85 S.Ct. 577, 584, 13 L.Ed.2d 446 (1964); Brookchester v. Ligham, 17 N.J. 460, 467 (1955).
Rent control ordinances have been sustained against the claim that they impair the obligations contained in the landlord tenant contracts. Brookchester v. Ligham, supra, 17 N.J. at 467; Jamouneau v. Harner, 16 N.J. 500, 514 (1954), cert. den. 349 U.S. 904, 75 S.Ct. 580, 99 L.Ed. 1241 (1955); Albigese v. Jersey City, 127 N.J. Super. 101, 112-113 (Law Div.), mod. on other grounds 129 N.J. Super. 567 (App. Div. 1974).
If rent control ordinances which limit the amount of profit a landlord can obtain under a lease do not impair the obligation of contracts, a fortiori this rebate system must be sustained.
U.S. Trust Co. v. State of New Jersey, supra, 431 U.S. 1, 97 S.Ct. 1505, is distinguishable. In that case the Supreme Court found that the States of New Jersey and New York repeal of a covenant between themselves and Port Authority bondholders impaired the obligation of contracts. The security of the bondholders' investment was virtually eliminated by the repeal. 431 U.S. 1, 97 S.Ct. at 1516. Moreover, the court was impressed by the fact that the states were reneging *111 on their financial obligations and it was unreasonable for the states to obtain money for mass transit in the manner attempted. 431 U.S. 1, 97 S.Ct. at 1519-1520.
The court was careful to point out that state regulation of private contractual rights involves different considerations.
The States must possess broad power to adopt general regulatory measures without being concerned that private contracts will be impaired, or even destroyed, as a result. Otherwise, one would be able to obtain immunity from the state regulation by making private contractual arrangements. This principle is summarized in Mr. Justice Holmes' well-known dictum: "One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them." Hudson Water Co. v. McCarter, 209 U.S. 349, 357, 28 S.Ct. 529, 531, 52 L.Ed. 828 (1908). [431 U.S. at 22, 97 S.Ct. at 1517-1518]
The Tenants' Property Tax Rebate Act does not impair the obligations of contracts. Nor is it a deprivation of property without due process of law. Monies that have been paid by the tenants to cover taxes which taxes were reduced are being returned to the tenants.
As far as Cold Indian Springs is concerned, the allegation that Block 218-2, Lot 1-G was assessed on a different basis in 1977, thus resulting in fewer dwelling units in 1976, is refuted by the Township of Ocean and, in any event, is irrelevant to the issue before the court.
In Cold Indian Springs there are no disputed issues of fact. Defendants are entitled to judgment as a matter of law dismissing the complaint. The order to show cause is dissolved. Plaintiffs will have 50 days from the date of the judgment to comply with the act.
In Chesterfield Associates there will be a judgment for plaintiff as to the interpretation of the act. The other relief sought is denied. Defendant will have 20 days to prepare a new certification.
No costs.