PER CURIAM.
The Division of Taxation appeals a Tax Court decision that Suburban Coastal Corp. (Suburban) is a financial business corporation under N.J.S.A. 54:10A-4(m), entitling it to the deduction provided in N.J.S.A. 54:10A-4(k)(2)(E)(iii). That decision reversed a ruling by the Division Director that Suburban pay an additional levy of over $330,000 in taxes, penalties and interest under the Corporation Business Tax Act, N.J.S.A. 54:10A-1 et seq. The Director made the additional assessment on the ground that a corporation qualified as a “financial business corporation” only if it did business in, as opposed to from, this State, and that since Suburban did not originate mortgages in this State, it did not fall within the legislative intent for a “financial business corporation.”
Suburban, a New Jersey corporation, is a wholly-owned subsidiary of Suburban Savings and Loan Association, a New Jersey chartered banking institution. Suburban does not originate mortgages on land located in New Jersey. It does, however, purchase mortgages on New Jersey residential properties from Suburban Savings and Loan Association. It packages these mortgages which it then sells to federal agencies and other investors. During the tax years involved, Suburban owned and sold 1597 mortgages worth over $85,000,000 that covered New Jersey residential properties.
Suburban conducts all of its business from an office in Wayne, New Jersey.
The Director contends that to qualify as a financial business corporation under the Corporation Business Tax Act, a corporation must do business in, as opposed to from, this State. The *309 Tax Court found the plain language of the statute belied such a contention.
In 1946, in response to federal legislation relating to state tax impositions on national banks, the Legislature adopted the Financial Business Tax Act (FBTA), N.J.S.A. 54:10B-1 et seq. The statute defined financial business corporation as
any corporate enterprise which is (1) in substantial competition with the business of national banks and which (2) employs moneyed capital with the object of making profit by its use as money, through discounting and negotiating promissory notes, drafts, bills of exchange and other evidences of debt; buying and selling exchange; making of or dealing in secured or unsecured loans and discounts; dealing in securities and shares of corporate stock by purchasing and selling such securities and stock without recourse, solely upon the order and for the account of customers; or investing and reinvesting in marketable obligations evidencing indebtedness of any person, copartnership, association or corporation in the form of bonds, notes or debentures commonly known as investment securities; or dealing in or underwriting obligations of the United States, any state or any political subdivision thereof, or of a corporate instrumentality of any of them. This shall include, without limitation of the foregoing, business commonly known as industrial banks, dealers in commercial paper and acceptances, sales finance, personal finance, small loan and mortgage financing businesses, as well as any other enterprise employing moneyed capital coming into competition with the business of national banks; provided, that the holding of bonds, notes or other evidences of indebtedness by individual persons not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with the business of national banks, shall not be deemed financial business. Nor shall “financial business” include national banks, production credit associations organized under the Farm Credit Act of 1933, stock and mutual insurance companies duly authorized to transact business in this State, security brokers or dealers or investment companies or bankers not employing moneyed capital coming into competition with the business of national banks, real estate investment trusts, or any of the following entities organized under the laws of this State: credit unions, savings banks, savings and loan and building and loan associations, pawnbrokers, and State banks and trust companies. [N.J.S.A. 54:10B-2(b), 54:10A-4(m); emphasis supplied].
Under N.J.S.A. 54:10B-3, the FBTA provided for an excise tax to be imposed on business entities “doing financial business in this State.”
The FBTA and the taxes imposed thereunder were in response to federal legislation, 12 U.S.C.A. § 548, which limited state taxation of national banks to a rate not greater than “is assessed upon other moneyed capital in the hands of individuals *310 of [a] state coming into competition with the business of national banks____” 12 U.S.C.A. § 548, subd. 1(b).
In 1975, using the identical definition of financial business corporation contained in the FBTA, the Legislature excluded corporate financial businesses from the FBTA and placed them within the purview of the Corporation Business Tax Act, L. 1975, c. 171, N.J.S.A. 54:10A-4(m). Thus, financial business "corporations became subject to the provisions of N.J.S.A. 54:10A-2:
Every domestic or foreign corporation which is not hereinafter exempted shall pay an annual franchise tax ... for the privilege of having or exercising its corporate franchise in this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office in this State.
The 1975 enactment contained no provision comparable to N.J.S.A. 54:10B-3 limiting the tax imposed to financial business corporations “doing financial business” in New Jersey.
The Division contends, even though the 1975 enactment made no specific inclusion of the phrase “doing financial business in this State,” the Legislature intended that limitation to be applicable and accordingly, Suburban may not take advantage of the deduction under N.J.S.A. 54:10A — 4(k)(2)(E)(iii) because it does not originate mortgages in New Jersey. In support of that contention the Director refers to rules of statutory construction which resort to factors outside the language of the law. One such factor is the Assembly Taxation Committee’s statement to the 1975 bill which provided:
This bill proposes to bring corporations now taxed under the Financial Business Tax Act under the provisions of the Corporation Franchise Tax Act.
It is a well-settled principle of statutory construction that a court cannot give a statute a different meaning if its language is plain, unambiguous and uncontrolled by other parts of the act or acts on the same subject. In re Jamesburg High School Closing, 83 N.J. 540, 547, 416 A.2d 896 (1980). Here, the language of N.J.S.A. 54:10A-2 is plain and unambiguous. “Every domestic or foreign corporation which is not hereinafter exempted shall pay an annual franchise tax....” The lan *311 guage contains no limitation as is present in the FBTA of “doing financial business in this State.”
Where the words of a statute are clear and explicit, courts should not resort to extrinsic material to determine that the Legislature intended something other than what it actually expressed. Gangemi v. Berry, 25 N.J. 1, 10, 134 A.2d 1 (1957). Extrinsic aids are never used to create an ambiguity where none exists. Myers v. Cedar Grove Tp., 36 N.J. 51, 61, 174 A.2d 890 (1961). Consequently there can be no reference to or reliance on the statement to the 1975 law, nor to other external factors.
Furthermore, when the Legislature amended the CBTA to include financial business corporations, it could have amended its qualifying definition to contain the condition that such corporations do financial business in this State. Since it did not, a reasonable implication is a purposeful alteration in substance. Cold Indian Springs Corp. v. Ocean Tp., 154 N.J.Super. 75, 95, 380 A.2d 1178 (Law Div.1977), aff’d 161 N.J.Super. 586, 392 A.2d 175 (App.Div.1978), aff’d 81 N.J. 502, 410 A.2d 652 (1980).
The plain, clear and unambiguous language of the 1975 enactment is that all financial business corporations, whether they do business in, from or just maintain offices in this State are entitled to deduct from their tax base, i.e., entire net income, debts owed to affiliate corporations as provided in N.J.S.A. 54:10A-4(k)(2)(E)(iii).
The Division, alternatively, argues the Tax Court improperly assessed the State interest on the money to be rebated to Suburban. We agree.
Interest is not recoverable on a refund of an excess tax payment unless provided for by statute. Universal C.I.T. Credit Corp. v. Paramus, 93 N.J.Super. 28, 224 A.2d 517 (App.Div.1966).
The CBTA makes no provision for payment of interest to taxpayers on tax refunds.
*312 Suburban argues the Tax Court should have required a refund prior to the exhaustion of the appeal process.
We conclude the Tax Court was correct in refusing to refund the tax overpayment until there was exhaustion of the appeal process. Woodcliff Management v. North Bergen Tp., 106 N.J.Super. 292, 294, 255 A.2d 776 (App.Div.1969). We note, however, that in light of the substantial amount involved, the approximately three-year period during which Suburban had no use of the improperly assessed $330,880.74 and the almost total absence of justification for the Director’s position, the money should be rebated immediately.
We, therefore, affirm the Tax Court decision relating to statutory construction, but reverse as to the order requiring payment of interest and remand for entry of an amended judgment consonant with this opinion.