[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 215 
Plaintiff homeowner filed a written application for a 1978 homestead tax rebate with the Director of the Division of Taxation. The application was received by the Division of Taxation on December 8, 1978. The Director advised plaintiff that his application had been denied "due to your failure to file the application by the extended filing deadline date of March 31, 1978." Plaintiff appealed to the State Division of Tax Appeals and the matter has been transferred to the Tax Court pursuant to N.J.S.A. 2A:3A-26.
The Director has moved for a dismissal of the taxpayer's complaint because it was filed after the March 31, 1978 deadline, as extended by N.J.A.C. 18:12-7.12. The Director argues that strict compliance with the statutory filing deadline is required. Plaintiff argues that he could not have filed the application by the extended deadline because sufficient tax information was not available for completion of the application form until June *Page 216 
1978, when he first received a tax bill for his property, which he purchased in August 1977. The issue posed by this case is whether plaintiff's application should be considered on the merits by the Director of the Division of Taxation even though the application was not filed by the March 31, 1978 deadline.
Indeed, as the Director argues, the courts of this State have traditionally required that taxpayers file timely applications as well as appeals and that they are barred from relief if they fail to do so. The basis for these decisions has been that statutory tax deadlines are "substantive" or "jurisdictional" statutes of limitation, and that the courts are without authority to extend such deadlines established by the Legislature. See, for example,Hackensack v. Rubenstein, 37 N.J. 39, 178 A.2d 625 (1962);Newark v. Fischer, 3 N.J. 488, 70 A.2d 733 (1950);Hackensack Water Co. v. Division of Tax Appeals, 2 N.J. 157,65 A.2d 828 (1949); Danis v. Middlesex Cty. Bd. of Taxation,113 N.J. Super. 6, 272 A.2d 542 (App.Div. 1971); Clairol,Inc. v. Kingsley, 109 N.J. Super. 22, 262 A.2d 213 (App.Div. 197 0), aff'd o.b. 57 N.J. 199, 270 A.2d 702 (1970), app. dism. 402 U.S. 902, 91 S.Ct. 1377, 28 L.Ed.2d 643 (1971), and Delaware Tp. v. Neeld, 52 N.J. Super. 63, 144 A.2d 801
(App.Div. 1958), all relied upon by the Director. The underlying doctrine is that of the separation of powers, N.J. Const.
(1947), Art. III, § 1, which precludes the members of one branch of government from exercising any of the powers properly belonging to either of the other branches, and which has been held to mean that a clear and unambiguous statute is not open to construction by the courts. Cold Indian Springs Corp. v. OceanTp., 154 N.J. Super. 75, 94, 380 A.2d 1178 (Law Div. 1977), aff'd 161 N.J. Super. 586, 392 A.2d 175 (App.Div. 1978), certif. granted 78 N.J. 410, 396 A.2d 596 (1978).
However, despite the clarity and certainty of the case law relied upon by the Director in support of his argument that plaintiff's failure to meet the statutory deadline is fatal to this court's jurisdiction, that case law has been modified by our Supreme Court in White v. Violent Crimes Comp. Bd., 76 N.J. 368, 388 A.2d 206 (1978). In White the court discussed the statutory time limitation for the filing of claims with the *Page 217 
Violent Crimes Compensation Board. The statutory framework inWhite provided a mechanism for limited public reimbursement for financial losses suffered by innocent victims of violent crime. N.J.S.A. 52:4B-1 et seq. The court held that the limitation period set forth in N.J.S.A. 52:4B-18 "is properly characterized as a member of the substantive class of limitation statutes." Id. at 375, 388 A.2d at 209. The homestead rebate filing deadline statute is also within the substantive class of limitation statutes. However, the court in White stated that despite "traditional and respectable authority" construing a party's noncompliance with a substantive limitation period as creating "an absolute bar to his claim," the determination that a substantive limitation was at issue could no longer end the court's inquiry. Id. at 376, 388 A.2d at 210. After analyzing decisions of the United States Supreme Court and the California Supreme Court, the court adopted the view that
. . . in the case of a statutorily created right, a "substantive" limitation period may appropriately be tolled in a particular set of circumstances if the legislative purpose underlying the statutory scheme will thereby be effectuated. [Id. at 379, 388 A.2d at 211]
In analyzing the Criminal Injuries Compensation Act of 1971, N.J.S.A. 52:4B-1 et seq., the court found no legislative intent to "preclude allowing a toll [of the limitation period] because of a victim's crime-induced incapacity." Id.
at 384-387, 388 A.2d at 214. The court concluded on the facts of the case that the limitation period of N.J.S.A. 52:4B-18 had been tolled and that plaintiff's application for victim compensation pursuant to the Criminal Injuries Compensation Act of 1971 was not barred.
The holding of the White case impels a close consideration of the objectives the Legislature sought to achieve in enacting the Homestead Rebate Act, N.J.S.A. 54:4-3.80 et seq., and in establishing a deadline for the filing of homestead rebate applications. The filing deadline in the rebate statute can no longer be treated as an absolute jurisdictional bar as it would have been under prior case law. As stated in White, "the focus of the judicial inquiry must remain on the question of legislative intent" in determining whether the statutory filing deadline may be tolled in any particular case. 76 N.J. at 387, *Page 218 
388 A.2d at 215. The standard to be applied under the White analysis is therefore virtually the same as that applied in construing an ambiguous statute. As stated in Cold Indian Springs Corp. v.Ocean Tp., supra:
 It is the responsibility of the court in construing a statute to determine what the Legislature intended rather than apply a meaning which seems fair and equitable to the court. Matawan v. Monmouth Cty. Tax Bd., 51 N.J. 291, 298, 240 A.2d 8 (1968). It is not the province of the judiciary to question the wisdom of statutory regulations, In re Howard Savings Inst., 32 N.J. 29, 46, 159 A.2d 113
(1960), or to revise tax programs. Matawan v. Monmouth Cty. Tax Bd., supra [51 N.J.] at 298 [240 A.2d 8]; Ridgefield Park v. Bergen Cty. Bd. of Taxation, 31 N.J. 420, 431, 157 A.2d 829 (1960). [154 N.J. Super. at 95, 380 A.2d at 1188.]
The Homestead Rebate Act was enacted after the Tax Clause of the State Constitution had been amended by approval of the voters at the general election of November 4, 1975. As a result of the amendment, the following language was added to the Constitution:
 The Legislature may adopt a homestead statute which entitles homeowners, residential tenants and net lease residential tenants to a rebate or a credit of a sum of money related to property taxes paid by or allocable to them at such rates and subject to such limits as may be provided by law. [N.J. Const.
(1947), Art. VIII, § I, par. 5]
At the next general election, on November 2, 1976, the people voted to amend the State Constitution to provide that the entire net receipts from any personal income tax be annually appropriated by the Legislature to counties, municipalities and school districts, "exclusively for the purpose of reducing or offsetting property taxes." N.J. Const. (1947), Art. VIII, § I, par. 7. It was clearly the intent of the framers of the two constitutional amendments that homestead rebate payments would be funded by the gross income tax, for the initial version of the Homestead Rebate Act provided that
 This act shall take effect immediately but shall remain inoperative unless and until a New Jersey Gross Income Tax has been enacted. [L. 1976, c. 72, § 16]
Accordingly, it must be concluded that the overall objective of the Legislature in enacting the Homestead Rebate Act, tied as it was to income tax revenues, was to assure the public that an income tax, if adopted, would be used for property tax relief rather than for ever-increasing state expenditures. *Page 219 
The Homestead Rebate Act was subsequently amended by Chapters 17, 241, 242 and 356 of the Laws of 1977, each of which was in effect for 1978, the year involved in the present case. Chapter 17 changed the characterization of the tax benefit from that of an "exemption" to that of a "rebate," and made certain other modifications not pertinent to this discussion. Chapters 241 and 242 extended the availability of the homestead rebate to resident shareholders in nonprofit residential cooperatives and mutual housing corporations. Chapter 356 provided for a single annual rebate payment rather than semiannual payments and established March 31 as the date by which each local tax collector must advise the Director of the names of property owners whose taxes are delinquent and the amounts of such delinquencies, to avoid payment of a rebate to a property owner who had not fully paid his taxes. It is apparent from these several amendments to the statute that the Legislature thoroughly considered the language it used in the Homestead Rebate Act.
The pertinent parts of the Homestead Rebate Act are as follows:
 Every citizen and resident of this State shall be entitled, annually, to a homestead rebate on a dwelling house and the land upon which such dwelling house is situated. . . . [N.J.S.A. 54:4-3.80(a)]
. . . . . . . .
 No homestead rebate, as provided herein, shall be allowed except upon written application therefor, which application shall be on a form prescribed by the Director of the Division of Taxation, and provided for the use of claimants hereunder by the tax assessor of the municipality constituting the taxing district in which such claim is to be filed, and the application has been approved as provided in this act. . . . [N.J.S.A. 54:4-3.82]
With respect to the time for filing a homestead rebate application, the Legislature has provided as follows:
 An application for a homestead rebate hereunder shall be filed with the assessor of the taxing district on or before December 1 annually and shall reflect the prerequisites for rebate on October 1 of the respective pretax year; provided, however, that the director may, by rule, waive the requirement for filing an annual application for any year or years subject to any limitations and conditions he may deem appropriate. . . . [N.J.S.A. 54:4-3.83(a)]
The Legislature also provided that a property owner who had not filed for a rebate in the previous year may file on or before *Page 220 
December 31 of the pretax year, N.J.S.A. 54:4-3.83(b), and that for the tax year 1977, the first year of the entitlement of residents of nonprofit residential cooperatives and mutual housing corporations to a rebate, the residents had to file applications within 45 days of the effective date of the amendment, or by November 17, 1977. N.J.S.A. 54:4-3.83(c). Thus, in the case of the latter residents, the Legislature established a filing deadline in the tax year itself rather than in the pretax year, and approximately 10 1/2 months later than that for other first-time applicants.
It is apparent that the objective of the Legislature in establishing these filing deadlines was to create a certain procedural orderliness that would be not only fair to the property owner but also administratively convenient to the Director, the county boards of taxation and the tax assessors. The Legislature was careful to give additional time to first-time applicants and to those recently permitted to apply at all. Moreover, the Legislature stated that the Director of the Division of Taxation "shall, for good cause shown extend the time of any applicant to file a claim for a homestead rebate for a reasonable period." N.J.S.A. 54:4-3.87. It is noteworthy that the Legislature employed the mandatory term "shall" in providing authority for the Director to extend the filing deadline, whereas in the remainder of the paragraph containing this direction the Legislature set forth four other powers and duties of the Director, in each of which the Legislature employed the discretionary term "may" in stating what the Director could do. See Harvey v. Essex Cty. Freeholder Bd., 30 N.J. 381,391-393, 153 A.2d 10 (1959). Pursuant to this authority, the Director twice extended the statutory deadline for all applicants, first until January 15, 1978 and then until March 31, 1978, in both cases by adoption of an emergency amendment to the Homestead Tax Rebate Rules. 10 N.J.R. 44(a) and10 N.J.R. 81(c). Neither emergency amendment of the filing deadline recited any "good cause" for the extension, being a blanket extension rather than an exception made for a specific claimant. The second extension, until March 31, 1978, was precipitated by the Legislature's passage of the bill which the Governor signed on January 31, 1978 as *Page 221 
Chapter 356 of the Laws of 1977 changing the date of the submission of tax delinquency lists to the Director from February 1 to March 31, 1978.
The legislative history of the Homestead Rebate Act, is instructive on the subject of the Legislature's intent with regard to the deadline for filing rebate applications. The initial bill to establish the rebate program, Assembly Bill
1330 (1976), was limited in application to senior citizens and the permanently and totally disabled. It established a filing date of December 31, but it stated that the application "may" be filed by that date. The bill also stated that the application, if not filed with the assessor by that date, "may be filed with the collector during the tax year," and, if not filed with the collector until after all taxes for the year had been fully paid,
. . . the claimant may make application to the governing body of the municipality constituting the taxing district for the refund of any tax overpaid, but without interest, and the governing body may, in its discretion, direct the return of any tax deemed by it to have been overpaid by reason of claimant's failure to make timely application for a homestead exemption; provided, however, that no application for a homestead exemption for any previous year shall be allowed by any assessor, collector or governing body. [§ 4]
This provision regarding the timeliness of filing is the same as that presently provided for the filing of applications for the veteran's deduction, N.J.S.A. 54:4-8.13, and the senior citizen's deduction, N.J.S.A. 54:4-8.43. It is more than likely that the scrivener of Assembly Bill 1330 (1976) copied the other statutory procedures when drafting the rebate bill.
It is significant that the Assembly Committee on Taxation substituted its own bill for Assembly Bill 1330 (1976). The committee substitute made two important changes in the bill: (a) it provided that an application for a homestead exemption (now rebate) "shall," rather than "may," be filed with the assessor on or before November 1, 1976 (now December 1); and (b) it deleted the provisions permitting a later filing with either the tax collector or the governing body. The Legislature did not undertake to revive the more lenient filing timetable in any of the subsequent amendments to the homestead rebate statute.
The court concludes from the final version of the act that the Legislature consciously limited the availability of the homestead *Page 222 
rebate to those property owners who filed applications within the time frame established in the statute. The Legislature was aware that in certain instances applications would be filed late, and it created a mechanism for a tolling of the statute by giving the Director authority to extend the deadline for good cause shown. The Director twice extended the filing deadline by emergency regulation. There is no evidence in the statute or the history of its enactment that the Legislature intended any further extensions than as the Director, in his discretion, decided to allow. The only direction given to the Director was that he "shall" extend the deadline "for good cause shown" and that the extension be for a "reasonable" time. Since this court finds that there was no legislative intent to permit a tolling of the statutory filing deadline except as granted by the Director, the standard of review to be imposed by this court is whether the Director abused his discretion in refusing to grant an additional extension to plaintiff in the present case.
The court concludes that the Director did not abuse his discretion. The statutory filing deadlines were December 1 and December 31, depending upon whether a property owner had previously applied for an annual rebate. The blanket extension until March 31 gave four additional months to most property owners and three months to all others. The court cannot conclude that this was an unreasonable extension. There is no basis for a conclusion that a longer extension, for example of six months or eight months, would have been reasonable and that the Director's extension was unreasonable. Obviously the application process must be closed at some point. The court cannot substitute its judgment for that of the Director as to whether a further extension should have been granted in any case unless the Director's extension was not for a reasonable period. Four months and three months seem to be "reasonable periods" considering the fact that local property taxes and homestead tax rebates are geared to a closely-scheduled series of events during each year, and that each year for property tax purposes is a separate entity. Furthermore, the extended deadline of March *Page 223 
31, 1978 was tied to the extended date for the submission to the Director of tax delinquency lists by local tax collectors, thereby establishing a single date for the completion of basic steps in the homestead rebate application process, an administrative convenience the court cannot overlook. It is also important to point out that if a property owner fails to file a timely application for a rebate in one year, he is not precluded from receiving a rebate in the next year, provided he complies with the statutory requirements in all respects. Thus the circumstances surrounding a homestead rebate application are fundamentally different than those involved in White v. ViolentCrimes Comp. Bd., supra, in which the failure to file a timely claim for compensation would have forever barred plaintiff from any relief whatsoever if the deadline had not been tolled.
By extending the deadline for a reasonable period for all applicants, irrespective of "good cause shown," the Director was not obligated to inquire into the allegations of any applicant as to late filing. The Director could have granted an extension to individual applicants only, depending upon their demonstrated reasons, but even in such cases the extension could have been for no more than a reasonable time. The Director in his discretion decided to give a more inclusive extension than the Legislature may have intended, but plaintiff is not in a position to challenge this, and does not do so. The Director exercised his discretionary authority in a liberal and appropriate manner and this court cannot conclude that he abused the discretion given him by the Legislature.
Nonetheless, since there are many cases pending in this court involving the denial of homestead rebate applications by the Director on the grounds of failure to file on time, a discussion of the facts in this case may be of interest as an example of litigants' reasons for failure to meet the extended deadline. In the present case, plaintiff argues that he was unable to file a timely application because he did not have sufficient information to complete the prescribed application form. Specifically, plaintiff testified that he was not provided with the block and lot number of his property, its 1977 assessed value or the 1977 *Page 224 
net property tax until he received his 1978 tax bill in June 1978. The problem stems from the fact that plaintiff purchased a property in August 1977 that had been subdivided from a farm, and that no tax bill was available to plaintiff for the second half of 1977 or the first half of 1978. However, the fact that plaintiff had no tax bill in hand upon which he would find the requisite information is not a legally sufficient reason for him to have held up filing his application for a homestead rebate for 1978. A taxpayer has a responsibility to ascertain his tax obligation even if no bill is rendered to him. N.J.S.A.54:4-58. The assessor's complete assessment list is on file in his office as well as at the county board of taxation at least as of January 10 of the tax year. N.J.S.A. 54:4-35 and N.J.S.A.54:4-55. The right of public inspection of the list is mandated by law. N.J.S.A. 54:4-38. Such inspection may be difficult in municipalities with part-time assessors who are not always readily available during normal business hours or for taxpayers who are not able to visit municipal or county tax board offices during normal business hours, but there is an affirmative duty on taxpayers to ascertain and to pay their property taxes. The extension of the filing deadline by the Director for 1978 provided plaintiff adequate time to acquire the requisite information.
The court finds that the Director did not abuse his discretion in denying plaintiff's application for a homestead rebate. Judgment will be entered dismissing plaintiff's complaint.