HOPKINS, J.T.C.
Plaintiff-taxpayer has appealed the Director’s denial of his application for a homestead rebate as provided by N.J.S.A. 54:4-3.80. The only issue is whether taxpayer’s claim was properly dishonored because it was filed beyond the January 17, 1983 filing deadline.
Taxpayer is the individual owner of a residential property located in Sparta, New Jersey. During the first part of November 1982 he was diagnosed as suffering from cancer of the spine. He was hospitalized almost continuously, in extreme pain, until the first part of January, 1983, when he was discharged. He then stayed with his mother-in-law in Roseland as his doctor had advised him to remain near the hospital in case of a relapse. After staying with his mother-in-law for about one week, he returned to his home in Sparta, where he remained in bed until at least January 18, 1983.
During his hospitalization, his wife took care of some of their financial affairs, such as utility bills. However, most of the mail was set aside pending his return to a physical condition sufficient to handle any required business matters. On returning to his home, and while still confined to his bed, he completed the homestead rebate application on January 18, 1983. It was received by the Director on January 21, 1983. The Director had extended the December 1,1982 filing deadline to January 17, 1983. Since taxpayer’s application was received after the January 17 deadline, the Director denied the claim.
As a result of a general election on November 4, 1975, the New Jersey Constitution was amended to permit homeowners, inter alia, a rebate or credit of a sum of money related to property taxes paid by them. Subsequently, the Homestead Rebate Act (the act) was enacted. At the next general election, the constitution was again amended to provide that the entire net receipts from any personal income tax were to be annually appropriated exclusively for the purpose of reducing or offsetting property taxes. The obvious intent of the framers of the constitutional amendments was to have the homestead rebates *476 funded by the newly enacted gross income tax. For a discussion of the history of the act, see Horrobin v. Taxation Div. Director, 1 N.J.Tax 213, 411 A.2d 479 (Tax Ct.1979).
The act, as applicable to the rebate here involved, provides that “[ejvery citizen and resident of this State shall be entitled, annually, to a homestead rebate on a dwelling house and the land upon which such dwelling house is situated.” N.J.S.A. 54:4-3.80(a). It further provides that there must be an annual written application for the rebate which must be filed on or before December 1. N.J.S.A. 54:4-3.82, -3.83(a). The Director mails the applications to homeowners by the fourth Monday in October. Immediately afterward, blank forms are sent to the Director’s field representatives who, in turn, deliver them to the various assessors throughout the State.
N.J.S.A. 54:4-3.87 provides in pertinent part, as follows:
The director shall, for good cause shown extend the time of any applicant to file a claim for a homestead rebate for a reasonable period. In such case, the application shall be processed and payments and credits made in accordance with the procedures established in the case of applications timely filed.
The issue here involved is whether, under the facts presented, there existed “good cause” which required the Director to extend the filing deadline from January 17, 1983 to January 21, 1983.
In Horrobin v. Taxation Div. Director, supra, an application was filed after the deadline. The applicant’s reason for the delay was that since he had purchased the property in August, 1977, he did not have sufficient information to complete the application until June, 1978, when he received his tax bill. The filing deadline was March 31, 1978. He filed his application in December, 1978. The court stated:
The only direction given to the Director was that he “shall” extend the deadline “for good cause shown” and that the extension be for a "reasonable” time. Since this court finds that there was no legislative intent to permit a tolling of the statutory filing deadline except as granted by the Director, the standard of review to be imposed by this court is whether the Director abused his discretion in refusing to grant an additional extension to plaintiff in the present case. [1 N.J.Tax at 222, 411 A.2d 479]
The court concluded that the applicant could have obtained the tax information from the taxing district, without waiting for a *477 tax bill, in ample time to file the application by March 31, 1978, the extended filing deadline.
Subsequent to Horrobin, the case of Eddy, Estate of Wallace S., etc. v. Taxation Div. Director, 4 N.J.Tax 360 (Tax Ct.1982), was decided. The issue was the applicability of N.J.S.A. 2A:14-23.1 which provided that no statute of limitations shall run on a cause of action in favor of a decedent, which had not been barred at his death, until at least six months after his death. That case involved the construction of a statute and was not concerned with good cause for late filing.
In Perrine v. Taxation Div. Director, 4 N.J.Tax 335 (Tax Ct.1982), the applicant was 83 years old on October 1, 1979. She had suffered a heart attack and stroke on January 10, 1979 and she was sent to a hospital until the end of April 1979. She was then transferred to a nursing home where she remained until December 1979. During her stay at the hospital and nursing home, she was seriously ill, under heavy medication and not able to perform her usual business activities. A niece looked after her financial affairs such as the payment of doctors’ bills and nursing home charges. Perrine was not aware of any mail delivered to her at the time. Since Perrine was not living at home, the application which was mailed to her home at the end of October, 1979, was returned to the Director by the Post Office. She did not realize that her application had not been filed until she did not receive her rebate. The filing deadline had been extended to March 3, 1980. Since the Director’s denial letter was dated September 22, 1980, she must have filed shortly before that date. In contending that her application should be honored, Perrine relied upon both the above factual circumstances as demonstrating good cause for the delayed filing as well as the principles enunciated in White v. Violent Crimes Comp. Bd., 76 N.J. 368, 388 A.2d 206 (1978). The court distinguished the rebate filing deadline from the principles enunciated in White by pointing out that the intent of the Legislature was to have the filing period for a crime victim commence only when the victim’s “crime-induced incapacity” had ceased. With respect to the issue of good cause for *478 delayed filings, the court cited Horrobin, supra, for the proposition that the Tax Court has consistently held that late filing precludes an applicant’s right to refund for that year, regardless of the taxpayer’s reasons for failure to meet the extended deadline. In so holding, the court dismissed the applicant’s complaint as untimely filed. Subsequently, in Olsson v. Taxation Div. Director, 6 N.J.Tax 430 (Tax Ct.1984), the court again granted Director’s motion to dismiss a complaint where the rebate application was untimely. There, the property owner died on November 2, 1982. Her will was probated on February 1, 1983 and, on that same date, her son qualified as executor. The rebate application was dated February 19, 1983 and was received by Director on February 22, 1983. The extended statutory filing deadline was January 17, 1983. In dismissing the complaint, the court followed the reasoning set out in Perrine, supra.
Counsel for Director in the subject case has stated that, in Director’s opinion, “good cause” for failure to timely file a homestead rebate application can only exist where the taxpayer is totally disabled and “must not have had anyone to help with his or her affairs, so that filing could not have occurred under any circumstances.”
In review, N.J.S.A. 54:4-3.87 directs the Director to extend the filing date on a showing of good cause by the applicant. Emphasis supplied. Horrobin recognized that directive, pointing out, however, that judicial relief from the Director’s denial would be granted only on a showing of abuse of discretion. The Director does acknowledge his authority to accept an untimely application from an applicant whose delay was attributed to being totally disabled with nobody to help in his or her affairs. Accordingly, the issue presented is whether the Director’s definition of good cause is correct and, if it is not, whether the denial of plaintiff’s untimely application, under the facts of this case, constitutes an abuse of discretion in the application of the good cause test.
*479 “Whenever the words ‘good cause’ appear in statutes or rules relating to the opening of defaults they mean (in the absence of other modifying or controlling words) a substantial reason that affords legal excuse for the default.” Nemeth v. Otis Elevator Co., Inc., 55 N.J.Super. 493, 497, 151 A.2d 58 (App.Div.1959).
Webster’s New Collegiate Dictionary (1979) defines “substantial” as:
1. a: consisting of or relating to substance b: not imaginary or illusory: REAL, TRUE c: IMPORTANT, ESSENTIAL 2: ample to satisfy and nourish____
The above definition amply supports the proposition stated in Wray v. Folsom, 166 F.Supp. 390 (W.D.Ark. 1958) that
“[G]ood cause” is a relative and highly abstract term, and its meaning must be determined not only by the verbal context of the statute in which the term is employed, but also by the context of the action and procedures involved and the type of case presented, [at 394]
In Wilson v. Morris, 369 S.W.2d 402 (Mo.App.Ct.1963), it was stated:
“Good cause” depends upon the circumstances of the individual case, and a finding of its existence lies largely in the discretion of the officer or court to which the decision is committed, [at 407]
Cf. O’Connor v. Abraham Altus, 67 N.J. 106, 129, 335 A.2d 545 (1975) where good cause was found to exist to permit the setting aside of a default judgment under R. 4:43-3.
To the same effect as above, the court in Rossetti v. Public Service Coord. Transport, 53 N.J.Super. 293, 147 A.2d 269 (App.Div.1958), in discussing the exercise of judicial discretion, stated:
While it has been well said ... that the exercise of discretion “cannot ordinarily be brought to the test of any fixed and definite rule,” (Palestroni v. Jacobs, supra (10 N.J.Super. [266] at page 273 [77 A.2d 183]), it should also be stated that, generally, it must be a legal discretion, not capricious, arbitrary or amounting to a mere whim, and that the trial judge must take account of the law applicable to the particular circumstances and be governed accordingly. Implicit is conscientious judgment, directed by law and reason and looking to a just result. [53 N.J.Super. at 297-298, 147 A.2d 269; citations omitted]
As previously noted, a particular circumstance here involved is that the homestead rebate constitutes an integral part of the overall tax reform effected through constitutional amendments *480 and statutory enactments. Those provisions were the implementation of a political philosophy to provide relief to local property taxpayers. N.J.S.A. 54A:9-25. Indeed, the amount of the homestead rebate is increased in the event the taxpayer is a senior citizen, totally disabled or, under certain circumstances, a surviving spouse of a decedent who had formerly received a homestead rebate. N.J.S.A. 54:4-3.81(a).
 The above relief provisions make applicable the well-established principle that a remedial statute should be liberally construed to accomplish the social aim of the Legislature. New Capitol Bar & Grill Corp. v. Div. of Employment Sec., 25 N.J. 155, 135 A.2d 465 (1957). Further, our courts “in furtherance of the interests of justice,” apply to administrative proceedings the principles which govern the setting aside of defaults in the courts. Nemeth v. Otis Elevator Co., Inc., supra; Stone v. Dugan Brothers of N.J., 1 N.J.Super. 13, 17, 61 A.2d 740 (App.Div.1948).
Since the homestead rebate program is part of an overall tax reform policy to relieve homeowners of a portion of the local property tax burden and, in addition, provides relief to the elderly, the disabled and, in certain circumstances, the spouses of decedents, it is remedial legislation. Therefore, the term “good cause,” as used therein, should be liberally construed.
While the Director had granted an extension of time from December 1, 1982 to January 17, 1983 to all taxpayers, that extension, in view of the fact that the required applications were not available to taxpayers until approximately four weeks before the statutory filing deadline, was obviously intended to compensate for the extremely short filing period of one month which would otherwise be mandated.
The test which the Director is applying on an individual basis is much too strict. Taking into consideration the legislative objective in providing for such rebate, it is difficult to perceive an intent to have “good cause” defined as total disability plus nobody to help in the applicant’s affairs. “Good cause,” in the case of delayed applications for homestead rebates, must be *481 construed liberally, rather than strictly, for what is at stake is the forfeiture of a property owner’s share in a fund which was designed to afford relief from the recognized burden of increasing local property taxes.
The factual situation under review shows that the applicant, who obviously took care of his own affairs, was incapacitated during nearly all of the filing period. Further, the application was filed promptly upon return to his home. While his wife was available for some help in his affairs, her availability cannot be used to overcome his personal incapacity.
I find that the Director abused his discretion in not processing the homestead rebate application.
Director will submit a form of judgment providing for the payment of plaintiff’s homestead rebate.