TAX COURT OF NEW JERSEY



Joshua D. Novin
Judge

Court & Washington Streets
P.O. Box 910
Morristown, New Jersey 07963-0910
Tel: (609) 815-2922, Ext. 54680
Fax: (973) 656-4305

NOT FOR PUBLICATION WITHOUT THE APPROVAL
OF THE TAX COURT COMMITTEE ON OPINIONS

October 13, 2017

Ms. Gabrielle Yablonsky
755 Radley Road
Westfield, New Jersey 07090

Matthew Erickson, Deputy Attorney General
Division of Law
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 106
Trenton, New Jersey 08625-0106

      Re:    Gabrielle Yablonsky v. Director, Division of Taxation
              Docket No. 015437-2014

Dear Ms. Yablonsky and Deputy Attorney General Erickson:

This letter constitutes the court's opinion following trial in connection with plaintiff's challenge to the denial of her 2007 tax year homestead rebate application as untimely. The two issues facing the court are whether "good cause" existed to extend the time period accorded plaintiff to file her homestead rebate application: (1) because of illness or hospitalization; or (2) because plaintiff attempted to timely file said application.

For the reasons explained more fully below, the court concludes plaintiff has established "good cause" by a fair preponderance of the evidence, that due to her medical condition, she was unable to file timely her 2007 tax year homestead rebate application. Accordingly, the court

1

reverses the Director, Division of Taxation's denial of plaintiff's 2007 tax year homestead rebate application, as untimely and orders payment to plaintiff of the 2007 tax year homestead rebate.

## I.  Procedural History and Findings of Fact

In accordance with R. 1:7-4(a), the court makes the following findings of fact based upon the submissions of the parties, and testimony elicited during trial.

Plaintiff, Gabrielle Yablonsky ("plaintiff"), is a 77-year-old resident of the State of New Jersey.  On or about November 30, 2008, plaintiff filed a 2007 Homestead Rebate Application (the "homestead rebate application") with defendant, Director, Division of Taxation ("Director").  The deadline for submission of the 2007 homestead rebate application was October 31, 2008.

By letter dated January 28, 2009, the Director denied plaintiff's homestead rebate application as untimely.  However, the Director's letter notified plaintiff that a statutory exception may exist for late filing.  In order to qualify for this exception, plaintiff was required to furnish the Director with evidence demonstrating that she suffered from "a serious medical condition [that] prevented [her] from timely filing the application."

On December 2, 2009, plaintiff's certified public accountant ("CPA") submitted a letter to the Director.  In his letter, the CPA explained that "Ms. Yablonsky. . .indicated to me that she had previously filed her homestead rebate application for 2007 in a timely fashion."  The CPA further expressed that his firm was engaged "in the latter part of 2008" to prepare plaintiff's 2007 personal income tax returns.  When retained, plaintiff advised him that she "already submitted her homestead rebate application using estimated figures."  The Director received no further documentation from or on behalf of plaintiff.

Accordingly, on April 20, 2010, the Director issued a Final Determination letter denying plaintiff's homestead rebate application ("First Final Determination letter").  The First Final

2

Determination letter explained that the Director did not receive "sufficient documentation to dispute" the initial denial of plaintiff's homestead rebate application due to late filing. Plaintiff did not submit a letter of protest or file a complaint with the Tax Court in response to the First Final Determination letter.

Several years elapsed without further action and on December 30, 2013, plaintiff forwarded a letter to the Director raising a number of issues, including questions regarding her homestead rebate application. In response, on January 14, 2014, the Director issued a second Final Determination letter denying plaintiff's homestead rebate application ("Second Final Determination letter"). The Second Final Determination letter stated:

> We have reviewed your account and found that your 2007 homestead rebate application was received on November 30, 2008, after the filing due date of October 31, 2008. You have failed to submit documentation that clearly substantiates that you filed or attempted to file on time.
>
> This denial will be final unless you apply to the Director of the Division of Taxation for a hearing within ninety (90) days. If you disagree with our findings and would like to apply for a hearing, please read and follow the enclosed Tax Appeal Process.

On or about April 12, 2014, plaintiff submitted to the Director a letter protesting denial of the homestead rebate application (the "Protest Notice"). The Protest Notice was stamped "RECEIVED" by the Director on April 17, 2014.

By letter dated August 18, 2014, the Director rejected plaintiff's Protest Notice contending that the protest and appeal period expired on July 19, 2010, 90-days following the First Final Determination letter (the "August 18, 2014 letter"). Moreover, the Director maintained that the Second Final Determination letter erroneously contained protest and appeal rights, and asserted that the Director's employees do not possess the authority to extend the 90-day protest and appeal period. The August 18, 2014 letter afforded plaintiff 90-days to appeal the Director's

3

determination with respect to the timeliness of the Protest Notice, but not the late filing of plaintiff's homestead rebate application.

On November 12, 2014, plaintiff filed a complaint with the Tax Court challenging the Director's rejection of her Protest Notice and denial of her homestead rebate application.

On July 9, 2015, the Director issued plaintiff another letter stating, this is "the FINAL DETERMINATION by the Division of Taxation with regard to your protest and/or request for a hearing postmarked April 21, 2014 [sic] and your tax court complaint postmarked December 27, 2014" ("Third Final Determination letter"). In concluding the Third Final Determination letter, the Director stated:

> …it has been determined that since you did not file a protest within 90 days of April 20, 2010, this branch has no jurisdiction in this matter and the denial of your 2007 homestead benefit is final.
>
> In the event you are not in accord with the above determination regarding the timeliness of your protest, you may file a complaint with the required fee relative to this determination, which must be received within (90) ninety days from the date of this notice, directly with the Tax Court or New Jersey. . .

On August 28, 2015, plaintiff filed a motion with the court seeking entry of an "[o]rder granting me my Homestead Rebate for year 2007." Following receipt of the motion, the court advised plaintiff and Director that it would consider said motion, as a motion for summary judgment under R. 4:46-1, and assigned a return date. On January 7, 2016, the Director filed a cross-motion for summary judgment seeking dismissal of plaintiff's Complaint.

On March 23, 2016, the court issued a letter opinion denying plaintiff's motion for summary judgment, and denying the Director's cross-motion for summary judgment. The court found genuine issues of material fact existed concerning the impact, if any, that plaintiff's medical condition played in the timeliness of her homestead rebate application, and the efforts undertaken

by plaintiff to complete a timely filing. However, in reaching its decision, the court concluded that the Director's First Final Determination letter was defective. Although the First Final Determination referenced the State Uniform Tax Procedure Law ("SUTPL"), N.J.S.A. 54:48-1, et seq., the court found that it did not strictly adhere to the minimum requirements of the SUTPL. Because the First Final Determination letter failed to set forth the time period accorded plaintiff to file a protest or appeal of the Director's action, the court rejected the Director's assertion that plaintiff's appeal period expired in 2010. Accordingly, the court set the matter down for trial.

Prior to commencement of trial, plaintiff submitted 24 documents to the court for consideration at trial. The documents consisted of various medical records, "venue of interrogatory" statements prepared by plaintiff and completed by plaintiff's podiatrist and pain management physician, "disability certificate[s]" from plaintiff's physicians, hospitalization records, bone density reports, and pamphlets on bone density, osteoporosis, and a medication used for the treatment of osteoporosis. In addition, during trial plaintiff produced a 2004 prescription for physical therapy. The documents chronicled plaintiff's bone density test, osteoporosis diagnosis, hospitalization, CT scan results, physician office visits, and various ailments and conditions experienced by plaintiff between 2003 and 2016.

Most relevant to the issues presented in this matter, the documents revealed that in or about 2003, plaintiff had a bone density scan confirming a diagnosis of osteoporosis in her lumbar spine, and osteopenia in her left forearm.[1] Additionally, in or about 2004, plaintiff was diagnosed with posterior tibial tendonitis in her left ankle.[2] The documents further revealed that plaintiff was

---

[1] Osteoporosis is a disease causing bones to become weak and brittle, sometimes resulting in fractures. It occurs when "the creation of new bone doesn't keep up with the removal of old bone." Osteopenia is the condition of having reduced bone mass. See http://www.mayoclinic.org/diseases-conditions/osteoporosis/symptoms-causes/syc-20351968

[2] Posterior tibial tendonitis occurs when the ankle tendon "becomes inflamed or torn. As a result, the tendon may not be able to provide stability and support for the arch of the foot, resulting in flatfoot." See http://orthoinfo.aaos.org/PDFs/A00166.pdf

5

hospitalized from August 28, 2008 to August 30, 2008, with "acute vertigo," dizziness and vomiting. During her hospitalization, a vascular carotid artery duplex scan[3] and a computerized tomography (CT) scan of plaintiff's brain were performed.

The balance of the documents submitted by plaintiff included: (i) a "disability certificate" dated February 25, 2015, prepared by plaintiff's physician, stating that plaintiff was "totally incapacitated" from February 25, 2015 to February 26, 2015, approximately six years following the homestead rebate application deadline; (ii) a "disability certificate" dated January 16, 2016, prepared by plaintiff's physician, stating that plaintiff was "partially incapacitated (home bound)" as a result of a "severe degenerative disease," however the certificate does not identify any period of incapacity; (iii) a December 16, 2014 letter from plaintiff's podiatrist requesting that "special consideration be given" plaintiff to "allow her to use the Access Link for her transportation"; and (iv) July 26, 2016 records from plaintiff's office visit with her physician, including referrals for an MRI and physical therapy. Thus, although plaintiff submitted numerous medical records for the court's review, many of the documents offered little meaningful insight into plaintiff's condition on, and in the months immediately preceding the October 31, 2008 homestead rebate application filing deadline.

Trial was conducted on August 22, 2017. During trial testimony was presented by plaintiff and Chung Lee, a conferee in the Director's Conference and Appeals Branch.

Following trial, and without prior court approval, on August 23, 2017, plaintiff submitted an email to the court containing a post-trial letter. Consequently, the court afforded the Director

---

[3] Using a device called a transducer that "sends out soundwaves that bounce off your blood vessels," a heathcare professional obtains pictures of the patient's arteries. Those pictures enable the healthcare professional to detect blockage or stenosis in a carotid artery. See http://www.hopkinsmedicine.org/healthlibrary/test_procedures/cardiovascular/carotid_artery_duplex_scan_92,p07661

6

an opportunity to respond to plaintiff's submission and on August 25, 2017, the court received the Director's response. Thereafter, on September 7, 2017, and again without prior court approval, plaintiff submitted a notarized letter to the court containing substantially the same statements as contained in plaintiff's August 22, 2017 letter.

## II. Conclusions of Law

The court's analysis begins with the principle that the Director's interpretation of tax statutes is entitled to a presumption of validity. Aetna Burglar & Fire Alarm Co. v. Director, Div. of Taxation, 16 N.J. Tax 584, 589 (Tax 1997). Our Supreme Court has directed the courts to accord "great respect" to the Director's construction of tax statutes, "so long as it is not plainly unreasonable." Metromedia v. Director, Div. of Taxation, 97 N.J. 313, 327 (1984). "[T]he Director's expertise in the highly specialized and technical area of taxation. . . is entitled to great respect by the courts." Quest Diagnostics, Inc. v. Director, Div. of Taxation, 387 N.J. Super. 104 (App. Div. 2006), certif. denied, 188 N.J. 577 (2006) (citing Metromedia, Inc., supra, 97 N.J. 313, 327 (1984)). However, the courts "deference" for the Director's findings is not absolute, "as the courts remain the 'final authorities' on the issues of statutory construction and are not obliged to 'stamp' their approval of the administrative interpretation.'" Koch v. Director, Div. of Taxation, 157 N.J. 1, 15 (1999) (citing New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 575 (1978)).

### A. Property Tax Rebate, Credit and Reimbursement Programs

In 1975, the Tax Clause of the New Jersey Constitution was amended to permit homeowners, residential tenants, and net lease residential tenants "a rebate or credit of a sum of money related to property taxes paid by or allocable to them at such rates and subject to such limits as may be provided by law." N.J. Const. (1947) Art. VIII, §1, par. 5. See also Horrobin v. Director,

Div. of Taxation, 1 N.J. Tax 213, 218 (Tax 1979). Since that time, our Legislature has enacted a series of provisions designed to provide property tax relief to both resident homeowners and tenants. Vavoulakis v. Director, Div. of Taxation, 12 N.J. Tax 318, 323-24 (Tax 1992), aff'd, 13 N.J. Tax 322 (App. Div. 1993). Although the laws have enjoyed various names and differing eligibility requirements, they have nonetheless sought to relieve New Jersey residents of a portion of the local property tax burden and, to provide relief to the elderly and disabled. Hovland v. Director, Div. of Taxation, 6 N.J. Tax 473, 480 (Tax 1984), aff'd, 204 N.J. Super. 595 (App. Div. 1985), certif. denied, 102 N.J. 400 (1986).

Under the Homestead Property Tax Credit Act, N.J.S.A. 54:4-8.57, et seq., an eligible "Resident" is entitled to a homestead rebate or credit "for the tax year equal to the amount determined as a percentage of property taxes not in excess of $10,000 paid by the claimant in that tax year on the claimant's homestead. . ." N.J.S.A. 54:4-8.59(a). However, a resident who has attained:

> 65 years of age or older at the close of the tax year, or who is allowed to claim a personal deduction as a blind or disabled taxpayer. . . shall be allowed a homestead rebate or credit for the tax year equal to the greater of (a) the amount determined pursuant to subsection a. of this section or (b) the amount equal to an amount by which property taxes paid by the claimant in that tax year on the claimant's homestead exceed 5% of the claimant's gross income. . .

> [N.J.S.A. 54:4-8.59(b)(1).]

In enacting the Homestead Property Tax Credit Act, our Legislature conferred substantial discretion upon the Director. The Director shall prescribe the form, format, and manner in which homestead rebate applications shall be submitted. N.J.S.A. 54:4-8.62(a). The Director may require the claimant furnish evidence of the "appropriate property tax bill or proof of rent paid for the prior tax year." Ibid. The Director may require "such other verification of eligibility for a homestead

rebate or credit as the director may deem necessary." Ibid. The Director may require the homestead

rebate application be submitted as part of claimant's gross income tax return. Ibid. If a claimant

has filed a request for an extension of time to submit gross income tax returns, the Director may,

in the Director's discretion, extend the due date for the claimant's homestead rebate application.

Ibid. Moreover, "any homestead benefit applied for and provided pursuant to this act shall be a

rebate or credit, as annually determined by the Director. . ." N.J.S.A. 54:4-8.58a.

Notably, our Legislature also conferred upon the Director, the authority to, "for good cause

shown," extend the time period for a claimant to "file a claim for a homestead rebate or credit. . ."

N.J.S.A. 54:4-8.62(a). In order to establish "good cause" to extend the application deadline, a

claimant shall:

> provide to the director either medical evidence, such as a doctor's
> certification, that the claimant was unable to file the claim by the
> date prescribed by the director because of illness or hospitalization,
> or evidence that the applicant attempted to file a timely application.
> Except as may be established by medical evidence of inability to file
> a claim, good cause shall not be established due to a claimant not
> having received an application from the director.
>
> [N.J.S.A. 54:4-8.62(a) (emphasis added).]

Here, plaintiff does not dispute that her homestead rebate application was untimely filed.

Instead, plaintiff contends that she is entitled to relief under the "good cause" exceptions of

N.J.S.A. 54:4-8.62a. First, plaintiff charges that her medical conditions were so severe and

debilitating, that they inhibited her ability to timely file the homestead rebate application. Second,

plaintiff maintains that she is entitled to relief under the attempted to file timely prong of the "good

cause" exception. Plaintiff asserts that, because she retained the services of a tax preparation firm,

and subsequently, a certified public accountant, to prepare her 2007 personal income tax returns

9

prior to the homestead rebate application deadline, she demonstrated a timely attempt to file her homestead rebate application.

The Director does not challenge the accuracy of plaintiff's medical diagnoses. Rather, the Director maintains that plaintiff's condition, in the months and days preceding the homestead rebate application deadline, fails to satisfy the threshold requirements for a "good cause" exception. The Director asserts that the medical evidence offered by plaintiff journals chronic medical ailments suffered by plaintiff, none of which rendered plaintiff incapacitated, or otherwise prohibited her from timely filing her homestead rebate application. The Director further asserts that despite plaintiff's medical ailments and contentions, no record exists evincing any attempt by plaintiff to submit her 2007 homestead rebate application, other than the homestead rebate application received by the Director on November 30, 2008.

B.   Good cause exceptions

The determination of whether the taxpayer has demonstrated "good cause" is evaluated on a case-by-case basis. Hovland v. Director, Div. of Taxation, 204 N.J. Super. 595, 598-600 (App. Div. 1985). Our courts have concluded that the term "good cause" shall be liberally construed in order to further the tax relief objectives of the statute. Bonda v. Director, Div. of Taxation, 22 N.J. Tax 77, 81 (Tax 2004); see also Hovland v. Director, Div. of Taxation, 6 N.J. Tax 473, 480 (Tax 1984) (concluding that "[t]he above relief provisions make applicable the well-established principle that a remedial statute should be liberally construed to accomplish the social aim of the Legislature.") In considering whether a taxpayer has satisfied the "good cause" exception, the courts in Hovland and Bonda have applied a "totality of the circumstances" approach.

10

1.      Illness or hospitalization; Medical evidence of inability to file a claim

In Hovland, supra, the taxpayer was continuously hospitalized with spinal cancer for three months prior to the due date of the homestead rebate application.  Upon returning home from the hospital, and while confined to his bed, the taxpayer completed the homestead rebate application.  The taxpayer's application was received by the Director four days after the filing deadline.  In rejecting the Director's argument that application of the "good cause" exception requires total incapacitation, the Appellate Division observed that "the very essence of [good cause] is its ability to afford relief in exceptional situations." 204 N.J. Super. at 600.  The court observed that a fundamental purpose to be served by the Homestead Property Tax Credit Act was to afford taxpayers property tax relief and adoption of an "unduly rigid" standard "fails to comport" with those legislative goals. Id. at 598.  The "severe and incapacitating" nature of the taxpayer's illness, "coupled with his good faith attempt to comply with the statutory time period," establishes "good cause" thereby excusing the taxpayer from compliance with the filing deadline. Id. at 600.

In Bonda, supra, the taxpayer suffered from multiple chronic medical conditions including "a chronic thyroid condition, bipolar disorder, hyper-somnolence, narcolepsy and signs of low-level myocardial injury." 22 N.J. Tax at 79.  Although the taxpayer suffered from "serious maladies," the court concluded that the taxpayer produced "insufficient evidence of an inability to comply with the filing deadlines." Id. at 82.  The court explained that "good cause" extensions "must not be abused and must only be reserved for those that can show a serious need." Ibid.  Thus, although the court shall liberally construe the exceptions, "good cause" must be reserved for those circumstances when a taxpayer has demonstrated "a serious need. . . [and] was medically unable to file the application in a timely manner." Ibid.

Here, plaintiff offered uncontroverted testimony and supporting medical records confirming her diagnosis with osteoporosis of the lumbar spine. Moreover, plaintiff credibly testified that, as a direct result of her osteoporosis, she suffers from "a lot of pain all the time," is at a higher risk for falling, and finds it very difficult to sit at a desk for any period of time to perform recordkeeping functions. Plaintiff submitted that she requires assistance getting dressed and is unable to perform common household tasks, such as meal preparation and cleaning. Additionally, plaintiff presented evidence that she was diagnosed with posterior tibial tendonitis in her left ankle in 2004, resulting in her having to wear an ankle brace when she walks.

More notably however, for purposes of the court's inquiry, plaintiff testified that on August 29, 2008, approximately 60 days prior to the October 31, 2008 homestead rebate application deadline, she was transported to a local hospital emergency room complaining of weakness, dizziness, and vomiting. The medical records offered by plaintiff confirm her emergency room visit and subsequent hospital admission with a diagnosis of "acute vertigo." According to plaintiff, the vertigo was symptomatic of a more serious medical condition, specifically "that were detailed in the complete report which stated that abnormalities signaled ischemic change, meaning a deficient blood supply to brain tissue causing a shortage of oxygen. . . ." The court's review of plaintiff's August 2008 hospitalization records and more specifically, the radiology report accompanying plaintiff's August 29, 2008 CT scan disclosed "a subtle area of low attenuation abnormality adjacent to the left ventricle. . ." The report concluded with a diagnosis of "[p]eriventricular white matter disease with a more focal area of abnormality in the left centrum semiovale. An acute infarct cannot be excluded." Finally, the report recommended to have a "followup [sic] MRI with diffusion images to exclude an acute infarct[ion]." Although plaintiff did not offer medical records or reports from any follow-up medical examinations or procedures,

12

plaintiff explained that following her discharge from the hospital, she continued to experience "constant dizzy spells at home which certainly impacted my ability to function in daily tasks including getting out of bed, bending over to tie my shoelaces or walking. . ." Plaintiff further expressed that she continues to suffer from "erratic" incidents of dizziness that "can last the whole day," and causes plaintiff to "feel like I am going to fall to the right." Additionally, plaintiff offered testimony that as a result of this condition, she has fallen on two occasions, resulting in broken bones and injuries to her head.

In response, the Director elicited testimony from Chung Lee, a conferee in the Director's Conference and Appeals Branch. Mr. Lee testified that on November 30, 2008, approximately thirty days following the October 31, 2008 deadline, the Director received plaintiff's handwritten '2007 Homestead Rebate Application (For Homeowners).' Mr. Lee further expressed that on April 15, 2008 the Director received a handwritten "2007 New Jersey Gross Income Tax Return filed by Ms. Yablonsky." Finally, Mr. Lee offered that on October 15, 2008, the Director received plaintiff's 2007 NJ-1040 Gross Income Tax Return.

The crux of defendant's arguments center around plaintiff's ability in April 2008 to complete a 2007 New Jersey Gross Income Tax Return; in the spring and summer 2008, to communicate with her tax professionals; and in November 2008, to complete the homestead rebate application. In sum, defendant asserted that if plaintiff was capable of completing a 2007 New Jersey Gross Income Tax Return, communicating with H&R Block and CPA, and completing a handwritten homestead rebate application in November 2008, plaintiff was not medically unable to timely file the homestead rebate application.

Here, the court finds plaintiff presented credible evidence of her osteoporosis and posterior tibial tendonitis diagnoses. Moreover, the court has no reason to question plaintiff's testimony

that these conditions have and continue to cause plaintiff constant pain, necessitating alteration of her lifestyle, mobility, and daily regimen. However, from the record and evidence presented, the court is not satisfied that these two chronic conditions alone are enough to establish that plaintiff was medically incapacitated or otherwise unable to attend to both recurrent and non-recurrent matters.

Nonetheless, plaintiff presented additional testimony and medical records disclosing a hospitalization in August 2008, approximately sixty days prior to the homestead rebate application deadline. Those medical records, along with plaintiff's testimony, reveal that plaintiff was also suffering from acute vertigo, possibly the result of "[p]eriventricular white matter disease with a more focal area of abnormality in the left centrum semiovale." Moreover, plaintiff credibly testified that following her discharge from the hospital she continued to experience frequent episodes of dizziness that materially affected her ability to perform common daily tasks, "including getting out of bed, bending over to tie my shoelaces or walking. . ." Plaintiff further conveyed that these episodes of dizziness are "erratic" and can last an entire day.

Our Supreme Courts has articulated that when interpreting a remedial statute the statutory language must be "liberally construed to accomplish the social aim of the Legislature." Hovland, supra, 6 N.J. Tax at 480. Nevertheless, the illness or condition must be "severe and incapacitating," rendering the claimant unable, for medical reasons, to comply within the statutory timeframe. Here, applying the "totality of the circumstances" approach to plaintiff's medical conditions, the court concludes that plaintiff's acute vertigo and dizziness, resulting from blood flow abnormalities detected in her brain on August 29, 2008, coupled with plaintiff's osteoporosis and posterior tibial tendonitis, rendered plaintiff "medically unable" to timely file her homestead rebate application. Bonda, supra, 22 N.J. Tax at 82.

Defendant's general assertions are insufficient to enable the court to conclude that plaintiff was not suffering from the effects of a severe and incapacitating illness in the weeks and months prior to the homestead rebate application deadline. Plaintiff produced credible testimony and medical records confirming her diagnosis, the severity of the medical condition, and the effect it had on plaintiff's ability to perform daily functions. The fact that plaintiff retained qualified tax professionals does not lessen the import or effect that plaintiff's medical condition played on her ability to diligently and attentively address non-recurrent matters, such as the homestead rebate application.

The court is persuaded, based on the record presented, that plaintiff has satisfied a "good cause" exception, and was unable to timely file her 2007 homestead rebate application as a result of illness or hospitalization. Accordingly, the court need not address the substance of plaintiff's argument that, she timely attempted to file her 2007 homestead rebate application.

## III.    Conclusion

For the foregoing reasons, the court concludes plaintiff has established "good cause" by a fair preponderance of the evidence, that due to her medical condition, she was unable to timely file her 2007 tax year homestead rebate application. Accordingly, the court reverses the Director, Division of Taxation's denial of plaintiff's 2007 tax year homestead rebate application, as untimely and orders payment to plaintiff of the 2007 tax year homestead rebate.

Very truly yours,


/s/Hon. Joshua D. Novin, J.T.C.

15